# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03558-NYW

HOUSTON CASUALTY COMPANY,

     Plaintiff,

v.

SWINERTON BUILDERS,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on the Motion for Summary Judgment on Dispositive Legal Issues (the "Motion for Summary Judgment" or "Motion") filed by Plaintiff Houston Casualty Company ("Plaintiff" or "HCC"). [Doc. 20, filed March 18, 2021]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated February 19, 2021, *see* [Doc. 14], and concludes that oral argument will not materially assist in the resolution of this matter. Upon review of the Motion and associated briefing, the applicable case law, and the record before the court, I respectfully **GRANT** the Motion for Summary Judgment.

## PROCEDURAL HISTORY

     HCC initiated this action against Defendant Swinerton Builders, LLC ("Defendant" or "Swinerton") on December 2, 2020, arising from an insurance coverage dispute between the Parties. [Doc. 1]. Swinerton, a general contractor, sought—and HCC denied—coverage for damaged roofs associated with ground-up construction of two 32-story concrete and steel high-rise apartment buildings located at 1101 E. Bayaud Avenue and 1091 E. Bayaud Avenue, Denver,

Colorado (the "Project") under a Commercial General Liability ("CGL") insurance policy issued by HCC to Swinerton. *See generally* [*id.*]. HCC asserts four declaratory judgment claims against Swinerton, seeking declarations that: (1) Swinerton's claim does not fall within the Insuring Agreement of the Policy; (2) the Policy exclusions preclude insurance coverage here; (3) if coverage is not excluded, Swinerton forfeited coverage by failing to cooperate in the investigation of its claim; and (4) the Policy is excess to Swinerton's Builders' Risk Policy. *See* [*id*]. Defendant answered the Complaint on January 4, 2021, asserting defenses but no counterclaims. [Doc. 10].

Plaintiff filed its Motion for Summary Judgment on March 18, 2021, seeking summary judgment on "dispositive legal issues." [Doc. 20 at 1]. Specifically, Plaintiff seeks summary judgment that (1) HCC has no duty to defend Swinerton with respect to the insurance claim, [*id.* at 13]; and (2) HCC has no duty to indemnify Swinerton with respect to the insurance claim. [*Id.* at 15]. Swinerton responded [Doc. 22],[1] and Houston replied [Doc. 23].

## LEGAL STANDARD

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is generally the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v.*

---

[1] In its Response, although Defendant argues that its roofing claim is covered by the Policy, it does not move for summary judgment in its favor. *See* [Doc. 22].

*Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  Where the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted).

Once the moving party has met this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1239 (D. Colo. 2012) ("The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.").  In considering the evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial; only the substance must be admissible at trial.  *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

## ANALYSIS

### I.    Record Before the Court

Before turning to the substantive arguments presented by the Parties, the court pauses to discuss the record before it.  As discussed above, the court may consider only admissible evidence, *see Gross* 53 F.3d at 1541, though the evidence need not be in a form that is admissible at trial; only the substance must be admissible at trial.  *Brown*, 835 F.3d at 1232.

### A.    Insurance Policy

Due to unusual circumstances presented in this case, the court first discusses whether it may consider the insurance policy (the "Policy") submitted by HCC.  *See* [Doc. 20-1].  By way of background, on September 8, 2021, this court issued a Minute Order noting that, in its Motion for Summary Judgment, Plaintiff had failed to comply with this court's Practice Standards by failing to include a Statement of Material Facts with citations to specific evidence in the record.  [Doc. 27].  The court ordered Plaintiff to respond to Defendant's Statement of Additional Material Facts in Defendant's Response to the Motion for Summary Judgment, *see* [Doc. 22], as well as provide its own Statement of Material Facts, on or before September 15, 2021.  [Doc. 27].  In addition, the court ordered Swinerton to respond to Plaintiff's anticipated Statement of Material Facts on or before September 22, 2021, or within seven days of Plaintiff's filing, whichever was earlier.  [*Id.*].  Plaintiff filed its Statement of Material Facts and Response to Plaintiff's Additional Statement of Material Facts on September 15, 2021, [Doc. 28], to which Defendant responded on September 22, 2021.  [Doc. 29].

In its Response to Plaintiff's Statement of Undisputed Material Facts [Doc. 29], Defendant "[d]en[ied] that the policy attached as Exhibit A to the complaint ([and] attached as Exhibit 1 to [Plaintiff's Motion for Summary Judgment] . . .) is the true and correct copy" of the Policy.  [Doc.

4

29 at ¶ 2]. In support, Swinerton asserts that, in its Initial Disclosures, HCC "provided a [bates-stamped] copy of the policy that contains 7 additional pages than that attached [to] the complaint" and argues that HCC "has not shown personal knowledge that either version is a true and correct version applicable to this suit." [Doc. 29 at ¶ 2]. In support, Swinerton submits a declaration from its counsel to which counsel has attached a version of the Policy that she asserts Defendant has in its possession [Doc. 22-19] and in which defense counsel asserts that "additional discovery will be needed to evaluate what policy is applicable to the claim brought by the property owner." *See* [Doc. 22-1 at ¶¶ 2-3, 8].

On October 4, 2021, this court issued an Order to Show Cause ordering (1) Plaintiff to show cause, on or before October 6, 2021, why, in light of the fact that "Plaintiff has not submitted any document authenticating the policy attached to its . . . Motion for Summary Judgment," this court can properly consider the Policy in ruling on the Motion; and (2) Defendant to show cause, on or before October 6, 2021, why the court could *not* properly consider the Policy, "particularly when it appear[ed] to be identical to the version of the policy submitted by Defendant as Exhibit 47 [Doc. 22-19], or otherwise demonstrate why Plaintiff's Exhibit 1 is not identical to Defendant's Exhibit 47." [Doc. 30 at 3-4].

Both Parties responded to the Order to Show Cause. [Doc. 31; Doc. 32]. In HCC's response, it asserts that the extra seven pages to which Defendant objects can be attributed to the fact that, in its Initial Disclosures, it included a copy of the Policy and "also included copies of two endorsements added to the Policy," but that the endorsements were "produced . . . as separate documents." [Doc. 32 at ¶ 4]. Plaintiff argues that the Motion for Summary Judgment "refers [only] to two pages of the Policy" and that those pages are identical in each version of the Policy. [*Id.* at ¶¶ 6-7]. HCC argues that "[t]he inclusion or exclusion of endorsements that are not at issue

5

is neither material nor does it create a genuine dispute."  [*Id.* at ¶ 11].  Meanwhile, Defendant's response asserts that there are "a couple of slight differences" between Plaintiff's version of the Policy and that submitted by Defendant, namely, that "Swinerton's policy has added language in red font on [page four]" and "Swinerton's policy has redacted premiums on [page 16]."  [Doc. 31 at 1-2].  In addition, Defendant asserts that HCC "has not verified nor identified any [HCC] employee with personal knowledge to support either of the two policies," and thus, "Swinerton objects to the evidence per Fed. R. Civ. P. [] 56(c)(2)."  [*Id.* at 2].

The court is respectfully not persuaded by Defendant's argument.  Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible* in evidence."  Fed. R. Civ. P. 56(c) (emphasis added).  Indeed, "the only appropriate basis on which to raise an evidentiary objection at the summary judgment phase" is an objection grounded in the fact that the material cannot be presented in an admissible form at trial.  *Sec. & Exch. Comm'n v. Mahabub*, No. 15-cv-02118-WJM-MLC, 2017 WL 6555039, at *2 (D. Colo. Dec. 22, 2017).  Swinerton does not argue that HCC cannot present the Policy in an admissible form at trial, *see* [Doc. 29 at ¶ 2], despite its "duty to state the specific ground for believing as much."  *Mahabub*, 2017 WL 6555039, at *2; *see also* Fed. R. Evid. 103(a)(1)(B) (in raising an evidentiary objection, a party must "state[] the specific ground [for the objection], unless it [is] apparent from the context.").  Moreover, the Federal Rules do not require that a party authenticate all documents to be considered on summary judgment.  *See* 10A Wright & Miller et al., Federal Practice & Procedure § 2722 (4th ed. 2021) (explaining that, prior to the 2010 amendment to the Federal Rules, Rule 56 required that "an exhibit could be used on a summary-judgment motion only if it were properly made part of an affidavit," but that this requirement was eliminated in the amendments); *see also Vanderlaan v.*

*Ameriprise Auto and Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4439875, at *2 n.6 (D. Colo. Sept. 27, 2021) ("The issue of authentication of exhibits in summary judgment briefing is not the same as admissibility at trial."). The court thus finds that Swinerton's objection does not preclude consideration of the Policy pursuant to Rule 56(c). *See Mahabub*, 2017 WL 6555039, at *2-3.

Moreover, Swinerton has asserted no legal authority demonstrating that "a couple of slight differences" between the version of the Policy submitted by HCC and that submitted by Swinerton—one of which may be the result of Swinerton's own decision to redact certain premiums contained in the Policy, *see* [Doc. 31 at 2; Doc. 22-19 at 16]—would render the court unable to consider the remainder of the document, particularly where Swinerton concedes the versions "otherwise appear identical" and where Swinerton fails to argue that such "slight differences" are material in this matter.[2] *See* [Doc. 31; Doc. 29]; *see also Cadence Educ., LLC v. Vore*, No. 17-2092-JWB, 2019 WL 917020, at *6 n.5 (D. Kan. Feb. 25, 2019) (rejecting the defendants' objection to the "version of the [agreement] attached to the motion" where it was "uncontroverted that the [agreement] executed by the parties thereto contained" certain relevant provisions, the defendants had not disputed the contents of the agreement, and the defendants had

---

[2] Insofar as defense counsel states in her declaration that "it is unknown whether there may be an endorsement that impacts [the definition of 'suit' under the Policy] or other relevant policy provisions throughout," *see* [Doc. 22-1 at ¶ 8], Defendant has cited no legal authority demonstrating that the court may consider arguments raised in an attorney's declaration attached to a response to a motion for summary judgment—particularly when it is speculative at best. *See* [Doc. 22]. Indeed, Defendant, as the policyholder, should have received a copy of the Policy and any endorsements in the ordinary course of business. Moreover, such an argument is not a proper objection under Rule 56(c), which permits only an objection "that [a] material fact cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The court respectfully is unpersuaded by this speculation.

"offer[ed] nothing to suggest that a genuine dispute exist[ed] concerning execution of the [agreement] or the above-quoted contents.").

Finally, the court notes that, in its Complaint, HCC alleged that "HCC issued insurance policy number H15PC30446-00, with effective dates of March 30, 2015 through March 30, 2018, to Swinerton . . . (the 'Policy' or the 'HCC Policy'). A copy of the Policy is attached hereto as Exhibit A." [Doc. 1 at ¶ 14 (emphasis omitted)]. In its Amended Answer, Swinerton replied: "Swinerton denies having sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 14 of the Complaint; therefore denies the allegations set forth in Paragraph 14 but avers that the HCC Policy speaks for itself." [Doc. 21 at ¶ 14]. Swinerton did not separately define "HCC Policy," *see generally* [*id.*], and thus the court can only infer that Swinerton was referring to the Policy attached to the Complaint as Exhibit A (and also attached to the Motion for Summary Judgment as Exhibit 1). Moreover, the court notes that Defendant relies on Plaintiff's attached version of the Policy to both dispute facts, *see* [Doc. 29 at ¶ 2], and support its substantive arguments in opposition to summary judgment, *see* [Doc. 22 at 8]. A party has not "raised any genuine question as to the authenticity of" an insurance policy where the party "essentially concedes that the documents are what [the proponent] claims they are." *Reliance Standard Life Ins. Co. v. Lyons*, 756 F. Supp. 2d 1013, 1024 (N.D. Ind. 2010) (rejecting a party's attempt to challenge the authenticity of documents where it did not challenge authenticity of the policy at the pleading stage and instead had "neither admit[ed] nor denie[d] [the exhibit] but indicate[d] that [the exhibit] speaks for itself").

For the foregoing reasons, the court considers the Policy provisions undisputed insofar as the Parties' submissions as to the operative provisions are identical. *Cadence*, 2019 WL 917020, at *6 n.5.

B.      **Undisputed Material Facts**

Viewing the evidence in a light most favorable to Swinerton, the court draws the following

material facts from the record before the court.[3]

1.      Defendant Swinerton Builders was hired as a general contractor for a high-rise

apartment complex construction project (the "Project") located at 1101 E. Bayaud Avenue and

1091 E. Bayaud Avenue in Denver, Colorado.  [Doc. 17 at 4; Doc. 29 at ¶ 1].

2.      Swinerton was hired by the property owner, AnaCondo, LLC (the "Owner").  [Doc.

22-3 at 1; Doc. 28 at 7, ¶ 1].[4]

3.      Plaintiff Houston Casualty Company issued commercial general liability policy

number H15PC30446-00 (the "Policy") to Swinerton and to the Owner.  [Doc. 1-1; Doc. 29 at ¶ 2;

Doc. 32 at 1-2].

4.      The Policy was effective at least from March 30, 2015 through March 30, 2018.

[Doc. 1-1 at 4; Doc. 29 at ¶ 2].[5]

---

[3] The court includes only those undisputed facts which are material to the instant Motion.  In some
instances, a Party has attempted to dispute the proffered material fact, but an examination of the
record finds that such dispute is not properly supported by evidence in the record or is otherwise
improper.  Where that is the case, the court has noted the purported dispute and its analysis.

[4] Plaintiff's Statement of Undisputed Material Facts and Response to Swinerton's Statement of
Additional Undisputed Material Facts contains some duplicate paragraph numbers.  For this
reason, the court refers to both the page and paragraph number when citing this document.

[5] HCC asserts that the Policy's "effective dates" were March 30, 2015 through March 30, 2018.
[Doc. 28 at 1, ¶ 2].  Swinerton "[d]en[ies] policy period" on the basis that "[t]he policy period is
shown as 3/30/[15] to 3/30/18 the policy provides extended products completed operations period
(see page 52 of 63 of the policy cited by Houston) [sic]."  [Doc. 29 at ¶ 2].  Thus, although it
appears that Swinerton argues that the policy period could have been extended, Swinerton does
not dispute that the policy period covered at least March 30, 2015 through March 30, 2018.  *See*
[*id.*].  Accordingly, the court considers this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2)
(permitting a court to consider a fact that a party "fails to properly address" as "undisputed for the
purposes of the motion").

9

5.     Non-party Lexington Insurance Company ("Lexington") issued a Builders' Risk policy to the Project's Owner, which included coverage for Swinerton.  [Doc. 20-2; Doc. 29 at ¶ 3].

6.     On October 31, 2017, counsel for Swinerton noticed an insurance claim to both HCC and Lexington, seeking insurance coverage under the Policy and the Lexington policy.  [Doc. 20-5 at 2-3; Doc. 20-6 at 2-3; Doc. 29 at ¶ 6].[6]

7.     The claim letter indicated that the claim "include[d] allegations of, among other things, trade damage to the [Project's] roof and related systems."  [Doc. 20-5 at 2; Doc. 29 at ¶ 6].[7]

8.     The manufacturer of the roofs for the Project, Firestone, wrote on October 26, 2017 that "[the] roof should be completely removed and re-installed as originally specified."  [Doc. 20-4 at 2; Doc. 29 at ¶ 5].[8]

9.     Network Adjusters, Inc. ("Network Adjusters") was a third-party claims adjuster authorized to respond to the loss on behalf of HCC.  [Doc. 22-9 at 2; Doc. 28 at 7, ¶ 2].

---

[6] Swinerton "[d]en[ies] statements regarding Exhibits 5 and 6 as misleading this Court and the corresponding footnote is argumentative and based on speculation [sic]."  [Doc. 29 at ¶ 6].  The court notes that there is no footnote to Paragraph 6 of Plaintiff's Statement of Undisputed Material Facts.  *See* [Doc. 28 at 2, ¶ 6].  Because Swinerton does not elaborate on how the statements are misleading, [Doc. 29 at ¶ 6], and does not cite to record evidence rebutting this asserted material fact, *see* Fed. R. Civ. P. 56(c)(1)(A); NYW Civ. Practice Standard 56.1; because these are not proper evidentiary objections, *Mahabub*, 2017 WL 6555039, at *2; and because Swinerton asserts that the documents "speak for [themselves]," [Doc. 29 at ¶ 6], the court considers this fact undisputed.  Fed. R. Civ. P. 56(e)(2); *see also Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment.").

[7] For the reasons set forth *supra* n.6, the court considers this fact undisputed.

[8] Swinerton states that it "[a]dmit[s] in part the quoted statement directly from Exhibit 4" but does not specify which part it admits and which part it denies, nor does it cite any evidence supporting its purported denial.  [Doc. 29 at ¶ 5].  The court thus considers this fact undisputed.  Fed. R. Civ. P. 56(e)(2); NYW Civ. Practice Standard 56.1.

10. On February 14, 2018, counsel for Swinerton informed a McLarens adjuster[9] that "the roof is in need of repair in order to mitigate further damages" and asked if the adjuster "need[ed] to further inspect anything before repairs begin." [Doc. 20-15 at 2; Doc. 29 at ¶ 15].[10]

11. The McLarens adjuster responded that it was likely that an expert would need to be retained to inspect the roofs before repair. [Doc. 20-15 at 2; Doc. 29 at ¶ 16].[11]

12. But although Swinerton asked if McLarens objected to the performance of repairs, McLarens did not object. [Doc. 22-14 at 13-14; Doc. 28 at 7, ¶ 5].[12]

13. On February 22, 2018, the Lexington adjuster requested a call with counsel for Swinerton and stated that he was "also still seeking costs anticipated by the insured to replace the roof systems." [Doc. 20-17 at 2; Doc. 29 at ¶ 19].[13]

---

[9] Insofar as Swinerton denies "all statements or classification that McLarens was an 'independent adjuster,'" [Doc. 29 at ¶ 15], this does not create a genuine dispute of fact. *Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-03569-NYW, 2021 WL 681444, at *4 n.6 (D. Colo. Feb. 22, 2021) ("[A]ttorney argument is not sufficient to rebut a material fact at summary judgment, as [the movant] must direct the court to competent evidence and cannot rely merely on a denial of this material fact."). Nevertheless, McLarens's role in this matter is disputed. Swinerton asserts that "[HCC], through Network Adjusters, Inc., hired McLarens to assist with the claim management and investigation." [Doc. 22 at ¶ 3]. HCC denies that it hired McLarens, [Doc. 28 at 7, ¶ 3], and instead asserts in its Motion for Summary Judgment that McLarens was "retained by HCC's third-party adjuster." [Doc. 20 at 4].

[10] Swinerton attempts to assert a denial on the same basis rejected *supra* n.9. For these reasons, the court considers this fact undisputed.

[11] Swinerton does not deny that the McLarens adjuster responded that an expert would need to be retained. [Doc. 29 at ¶ 16]. However, Swinerton disputes HCC's assertion that the adjuster "responded . . . that **he** would likely need to retain an expert," [Doc. 28 at 4, ¶ 16 (emphasis added)], arguing that the adjuster stated "we" and that this references "Houston and/or Network Adjusters (claims adjuster hired by Houston)." [Doc. 29 at ¶ 16].

[12] HCC does not dispute this fact but asserts that "neither HCC nor Network [Adjusters] was copied" on this email. [Doc. 28 at 8, ¶ 5].

[13] Insofar as Swinerton attempts to argue against statements made in HCC's Motion for Summary Judgment in its Response to HCC's Statement of Material Facts, *see* [Doc. 29 at ¶ 19], such argument is not properly before the court. *Stoker*, 2021 WL 681444, at *4 n.6 (attorney argument is insufficient to create a genuine dispute of fact); *see also* NYW Civ. Practice Standard 10.1 ("On

14.      On February 23, 2018, the Owner of the Project sent a letter to Swinerton "concerning matters arising under the construction contract between Owner and Swinerton Builders." [Doc. 20-18 at 2; Doc. 29 at ¶ 20].[14]

15.      On March 1, 2018, Swinerton's counsel advised the McLarens adjuster that Swinerton "anticipate[d] [roof] repairs to start on" March 19, 2018. [Doc. 20-19 at 3; Doc. 29 at ¶ 21].[15]

16.      The McLarens adjuster responded that "[w]e would like to request the repairs be delayed until the investigation is complete." [Doc. 20-19 at 2; Doc. 29 at ¶ 22].[16]

---

cases in which I am the presiding judge, . . . a response [to a motion for summary judgment] is limited to twenty (20) pages.").

[14] HCC classifies this letter as the Owner's "first demand" to Swinerton, [Doc. 28 at 4, ¶ 20], a characterization that Swinerton denies. [Doc. 29 at ¶ 20]. Because the Parties agree that the Owner sent Swinerton the letter reflected in Exhibit 18, the court considers the above fact undisputed.

[15] HCC asserts that this email "advised . . . that roof repairs would being on March 19, 2018." [Doc. 28 at 4, ¶ 21]. Swinerton "[d]en[ies]" statements in reference to Exhibit 19 as misleading the Court" because "[t]here was no definitive statement as to when the repairs were to commence rather an anticipation date to determine whether or not [HCC], Network, and/or McLarens needed additional access to the roof." [Doc. 29 at ¶ 21]. However, Swinerton cites no evidence in support of its assertion that this "anticipation date" was referenced "to determine whether or not [HCC], Network, and/or McLarens needed additional access to the roof." *See* [*id.*]. Instead, Swinerton merely cites evidence demonstrating that the repairs began at a later date. *See* [Doc. 20-25 at 2]. Moreover, Exhibit 19 plainly states that "Swinerton anticipates repairs to start on March 19th to mitigate damages." [Doc. 20-19 at 3]. The court thus considers it undisputed that Swinerton sent an email to McLarens stating that it anticipated repairs would start on March 19, 2018. Fed. R. Civ. P. 56(e)(2).

[16] Swinerton asserts a denial on the same bases rejected *supra* n.9 and further references the adjuster's "reference of 'we would like to request the repairs be delayed . . .' not just himself." [Doc. 29 at ¶ 22]. The court cannot ascertain Swinerton's exact objection, but due to the clear language of Exhibit 19 and Defendant's concession that the email contained this language, the court considers this fact undisputed. Fed. R. Civ. P. 56(e)(2).

17.     On March 5, 2018, Swinerton's counsel confirmed with the McLarens adjuster that an inspection could move forward on March 8, 2018.  [Doc. 20-19 at 2; Doc. 29 at ¶ 23].[17]

18.     An inspection of the Project premises occurred on March 8, 2018.  [Doc. 20-20 at 5; Doc. 29 at ¶ 23].[18]

19.     In a letter dated March 8, 2018, the Owner "demand[ed] that [Swinerton] proceed immediately with full removal and replacement of all impacted roofs at the Project."  [Doc. 20-23 at 3; Doc. 29 at ¶ 29].

20.     On April 20, 2018, counsel for Swinerton advised the McLarens adjuster and the Lexington adjuster that roof repairs would commence the following week.  [Doc. 20-24 at 2; Doc. 20-25 at 2; Doc. 29 at ¶ 30].[19]

21.     McLarens did not object to Swinerton pursuing repairs.  [Doc. 22-14 at ¶ 8; Doc. 28 at 8, ¶ 7].[20]

---

[17] Despite Swinerton's numerous objections and/or denials in its Paragraph 23, Swinerton does not dispute this statement.  *See* [Doc. 29 at ¶ 23].  The court accordingly considers this fact undisputed.

[18] Swinerton admits that HCC "sent a consultant from Wiss, Janney, Eistner Associates, Inc. to further investigate the roof" but denies the "remaining statements for lack of evidence as Exhibit 20 does not support [the] factual assertion."  [Doc. 29 at ¶ 24].  Swinerton cites no evidence in support of its denial nor explains why the evidence cited by HCC does not support HCC's assertion of fact.  *See* [*id.*].  The document cited by HCC in support of its factual assertion states: "A second inspection was completed with retained consultants at Wiss, Janney, [Eistner] Associates, Inc. and [Swinerton] representative Sam Hosfelt on March 8."  [Doc. 20-20 at 5].  The court thus considers this fact undisputed.  Fed. R. Civ. P. 56(e)(2); NYW Civ. Practice Standard 56.1.

[19] Swinerton admits "the contents of Exhibits 24 and 25."  [Doc. 29 at ¶ 30].  Insofar as Swinerton asserts attorney argument in this Paragraph, *see* [*id.*], this is insufficient to create a genuine dispute of fact and is not properly before the court.  *Stoker*, 2021 WL 681444, at *4 n.6.

[20] HCC does not dispute this fact but asserts that "neither HCC nor Network [Adjusters] was copied" on this email.  [Doc. 28 at 8, ¶ 7].

22.     On April 26, 2018, the Owner's attorney sent a letter to Swinerton stating: "Swinerton has agreed to proceed with replacement and reinstallation of roofs at the Project at no cost to the Owner."  [Doc. 20-26 at 2; Doc. 29 at ¶ 31].[21]

23.     Swinerton replaced the roofs on the Project between April 2018 and October 2018. [Doc. 20-27 at 4; Doc. 29 at ¶ 32].[22]

24.     On June 21, 2018, HCC sought partial payment of Swinerton's deductible under the Policy.  [Doc. 22-6 at 2; Doc. 28 at 8, ¶ 10].

25.     On August 6, 2018, HCC sought additional payment of Swinerton's deductible under the Policy.  [Doc. 22-7 at 2; Doc. 28 at 8, ¶ 11].

26.     On September 19, 2018, HCC, through Network Adjusters, set a letter to Swinerton stating that it would be "handling this matter pursuant to a full Reservation of Rights."  [Doc. 22-9 at 9; Doc. 28 at 8, ¶ 12].[23]

---

[21] Swinerton denies HCC's assertions that this was a "third letter" or a "confirming" letter, but "[a]dmit[s] that the [O]wner's counsel sent a letter to Swinerton dated April 26, 2018 identified as Exhibit 23." [Doc. 29 at ¶ 31].  The court believes this was a typographical error, as the April 26, 2018 letter is marked as Exhibit 26, while Exhibit 23 contains a letter dated March 8, 2018.  *See* [Doc. 20-23; Doc. 20-26].  However, even if this were not a typographical error, Swinerton's objections would not create a genuine dispute of fact. Fed. R. Civ. P. 56(e)(2).  The court considers this fact undisputed.

[22] In its paragraph purporting to deny this fact, Swinerton again asserts attorney argument directed not at HCC's Statement of Undisputed Material Facts, but instead at Plaintiff's Motion for Summary Judgment.  [Doc. 29 at ¶ 32].  Attorney argument is not properly raised in a party's response to a statement of material facts.  *Stoker*, 2021 WL 681444, at *4 n.6.  Regardless, Swinerton attempts to dispute the date of the roof replacement, asserting that it "[d]en[ies] statement that '[a]t some point between April 2018 and October 2018, Swinerton replaced the roofs on the two buildings' because it lacks supporting evidence.'" [Doc. 29 at ¶ 32].  However, Swinerton does not cite to any record evidence demonstrating that Swinerton did not repair the roofs between April 2018 and October 2018 so as to support its denial.  [*Id.*].  The court considers this fact undisputed.  NYW Civ. Practice Standard 56.1; *Pasternak*, 790 F.2d at 834.

[23] HCC denies Swinerton's statement that HCC failed to raise a lack-of-suit argument in this letter, *see* [Doc. 22 at ¶ 12], but does not dispute that HCC sent this letter through Network Adjusters or

27.     On October 8, 2018, HCC, through Network Adjusters, issued a supplemental reservation of rights letter to Swinerton.  [Doc. 22-10 at 2; Doc. 28 at 8, ¶ 13].

28.     On February 1, 2019, Swinerton provided, *inter alia*, a copy of the Owner's demand letter to HCC.  [Doc. 22-12 at 9; Doc. 28 at 9, ¶ 14].

29.     On February 19, 2019, HCC, through Network Advisors, sent a letter to Swinerton stating that HCC had determined "that there currently is no coverage for this Claim."  [Doc. 22-13 at 3; Doc. 28 at 9, ¶ 15].[24]

30.     On April 15, 2019, Swinerton responded to the letter asserting that HCC had "[w]aived its [r]ight to [d]eny [coverage based] on a [l]ack of [s]uit."  [Doc. 22-14 at 3-6; Doc. 28 at 9, ¶ 16].[25]

31.     On June 11, 2019, Network Adjusters issued a letter to Swinerton stating:

> To be clear, while HCC has been provided with very little of the information that it has requested with respect to this claim, HCC has not denied the claim outright. HCC reserved rights in the event that any of the information that may be provided on behalf of Swinerton would show that coverage existed.  Because the information we have requested has not been forthcoming, we have continued to reserve, while acknowledging that presently, because the claim does not fall within the Insuring Agreement, there is nothing to cover.  The claim remains open with HCC, however, in the event that information is brought to our attention that would bring the claim within the scope of coverage.

---

the contents of the letter.  *See* [Doc. 28 at 8, ¶ 12].  The court thus considers this fact undisputed. Fed. R. Civ. P. 56(e)(2).

[24] Swinerton asserted that HCC "issued a denial letter on the basis of lack of 'suit' or damages legally obligated to pay."  [Doc. 29 at ¶ 15].  HCC attempts to deny this fact by referencing the language in the letter, but HCC fails to explain its denial.  *See* [Doc. 28 at 9, ¶ 15].  Because neither Party disputes the language in this letter, the court considers this fact undisputed.  Fed. R. Civ. P. 56(e)(2).  Moreover, because HCC does not dispute that this letter was sent by "[HCC], through Network Adjusters," the court considers this fact undisputed.  [Doc. 29 at ¶ 15]; [Doc. 28 at ¶ 15].

[25] HCC denies Swinerton's summary of the letter but does not dispute the letter's contents.  [Doc. 28 at 9, ¶ 16].  Accordingly, this court deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2).

The letter also stated that HCC was "aware of no 'suit' against Swinerton or any other party related to the roofs at the Project. There is therefore no current duty to defend." [Doc. 22-16 at 3, 5; Doc. 28 at 9, ¶ 18].[26]

32.     Swinerton seeks coverage from HCC for water damage to the Project's roof system. [Doc. 20-29 at 7; Doc. 29 at ¶ 36].[27]

33.     On December 2, 2020, HCC initiated this civil action seeking a declaratory judgment that, *inter alia*, it does not have a duty to defend Swinerton nor a duty to indemnify Swinerton. [Doc. 1].

34.     At no time did the Owner initiate a civil action or an arbitration against Swinerton based on the Project's roof system. [Doc. 20 at 13; Doc. 22 at 11].

## II.     The Motion for Summary Judgment

HCC seeks summary judgment on Claim One of the Complaint, the Claim in which it seeks a declaration that Swinerton's insurance claim does not fall under the Insuring Agreement of the Policy. *See* [Doc. 20 at 10; Doc. 1 at  6]. HCC's argument is two-fold: first, it argues that it owed no duty to defend Swinerton, [Doc. 20 at 11], and second, it asserts that it has no duty to indemnify Swinerton. [*Id.* at 13]. The court addresses these arguments in turn.

---

[26] Swinerton quotes only a portion of this letter in its Statement of Additional Material Facts. [Doc. 22 at ¶ 18]. Neither Party disputes the content of this letter. *See* [*id.*]; *see also* [Doc. 28 at 9, ¶ 18]. The court thus considers this fact undisputed. *See Rivero v. Bd. of Regents of Univ. of N.M.*, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *10 n.72 (D.N.M. Mar. 7, 2019), *aff'd*, 950 F.3d 754 (10th Cir. 2020) (where neither party disputed contents of non-hearsay document, construing the fact that document contained such contents as undisputed fact).

[27] In attempting to deny this statement of fact, Swinerton asserts attorney argument related to the HCC's substantive arguments in its Motion for Summary Judgment. *See* [Doc. 29 at ¶ 36]. As explained throughout this Order, this does not create a genuine dispute of fact, nor is such argument properly before the court. *Stoker*, 2021 WL 681444, at *4 n.6. Swinerton does, however, admit that it continues to seek coverage from HCC. [Doc. 29 at ¶ 36]. As a result, the court considers this fact undisputed.

A.      **Colorado Contract Law Principles**

Because this court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, [Doc. 1 at ¶ 11], the court applies the substantive law, including choice of law principles, of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Colorado law provides that interpretation of an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co*., 586 F.3d 803, 808 (10th Cir. 2009). Here, it is undisputed that the Project, the source of the insurance dispute at issue, is located in Colorado, *see, e.g.*, [Doc. 17 at 4; Doc. 29 at ¶ 1], and the Parties both raise arguments under Colorado law. *See* [Doc. 20; Doc. 22]. Accordingly, the court applies Colorado law here.

In Colorado, "[a]n insurance policy's terms are construed according to principles of contract interpretation: a court seeks to give effect to the intent and reasonable expectations of the parties." *Auto-Owners Ins. Co. v. High Country Coatings, Inc*., 388 F. Supp. 3d 1328, 1333 (D. Colo. 2019). Under this approach, "words should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990); *see also Saiz v. Charter Oak Fire Ins. Co.*, 299 F. App'x 836, 839-40 (10th Cir. 2008) (unpublished). "Policy terms 'are to be interpreted as understood by an ordinary person, not by one engaged in the insurance business.'" *DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1016 (10th Cir. 2011) (quoting *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 516 (Colo. App. 1996)).

If a provision in the contract "is clear and unambiguous," the court "should not rewrite it to arrive at a strained construction." *Chacon*, 788 P.2d at 750 (citing *Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 232 (Colo. 1988)). "Ambiguity exists where a policy term admits of more than one

reasonable interpretation." *DISH Network*, 659 F.3d at 1016 (citing *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007)).   "Because of the 'unique nature of insurance contracts and the relationship between the insurer and insured,' ambiguous provisions are construed against the insurer and in favor of providing coverage to the insured." *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, No. 07-cv-00066-MSK-CBS, 2013 WL 1324600, at *3 (D. Colo. Mar. 31, 2013) (quoting *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)).   But "[t]he mere fact that the parties differ in their interpretation of an instrument does not, of itself, create an ambiguity." *Rodriguez By & Through Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991) (citing *Radiology Prof. Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (Colo. 1978)).

"In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1055 (D. Colo. 2013) (citing *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n*, 67 P.3d 12, 20 (Colo. 2003)).   The determination of whether the terms of the contract are ambiguous is a question of law.   *See id.*   If the terms of the contract are not ambiguous, the construction of the contract is also a question of law.   *See Devine v. Ladd Petroleum Corp.*, 743 F.2d 745, 748 (10th Cir. 1984).   "If, however, a contract is determined to be ambiguous, . . . the meaning of its terms are generally an issue of fact to be determined in the 'same manner' as other factual disputes." *Stroh Ranch*, 935 F. Supp. 2d at 1055 (citing *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005); *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996)).

Generally, under a CGL policy, "the initial burden is on the insured to show that the loss sustained comes within the terms of the insurance policy; in other words, the insured has the burden

to prove a material issue of fact exists concerning their entitlement to recovery under the insurance policy." *Peerless Indem. Ins. Co. v. Colclasure*, No. 16-cv-00424-WJM-CBS, 2017 WL 633046, at *3 (D. Colo. Feb. 16, 2017).  If the insured meets that burden, the burden shifts to the insurer "to prove that the policy excludes the proximate cause of the loss." *Id.*

### B.    The Duty to Defend

Whether there is a duty to defend is a question of law.  *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).  "[T]he duty to defend arises where the alleged facts even potentially fall within the scope of coverage, but the duty to indemnify does not arise unless the policy actually covers the alleged harm." *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).  "The insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." *Cyprus*, 74 P.3d at 301.  Thus, "[a]n insurer seeking to avoid its duty to defend an insured bears a heavy burden." *Greystone Const.*, 2013 WL 1324600, at *4.  "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might be held to indemnify the insured." *Melssen v. Auto-Owners Ins. Co.*, 285 P.3d 328, 333 (Colo. App. 2012).  Indeed, the duty to defend is "designed to cast a broad net in favor of coverage" and is construed "toward affording the greatest possible protection to the insured." *Cyprus*, 74 P.3d 294, 297 (Colo. 2003).

### 1.    The Existence of a "Suit" Under the Policy

Plaintiff first argues that the Policy does not provide coverage for Defendant—and that Plaintiff was therefore not obligated to provide any defense to Defendant—because there was no "suit" from which to defend Defendant, as required by the Policy.  [Doc. 20 at 11].  The Policy provides that HCC "ha[s] the right and duty to defend the insured against any 'suit' seeking"

damages "because of 'bodily injury' or 'property damage' to which [the coverage] applies." [Doc. 20-1 at 17]. The Policy defines "suit" as:

> [A] civil proceeding in which damages because of "bodily injury[,"] "property damage[,]" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
>> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>>
>> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

[*Id.* at 31].

There is no dispute that the Owner did not initiate any type of lawsuit or arbitration proceeding. [Doc. 20 at 13; Doc. 22 at 11]. There is also no genuine issue of material fact that the Owner sent a March 8, 2018 demand letter to Swinerton. [Doc. 20-23 at 3; Doc. 29 at ¶ 29]. Rather, the Parties' dispute primarily concerns the legal ramifications of the letter in which the Owner demanded that Swinerton replace the defective roofs, i.e., whether such a demand letter can constitute a "suit" under the Policy. *See, e.g.*, [Doc. 20 at 12; Doc. 22 at 6-9]. According to Plaintiff, "Swinerton has not and cannot point to any evidence that there is a 'suit' involving the roofs at issue" because "there has been no lawsuit filed in a civil proceeding, [and] there has been no arbitration or other alternative dispute proceeding" so as to trigger HCC's duty to defend— rather, according to Plaintiff, Swinerton "points only to a 'claim'" made by the Owner. [Doc. 20 at 12-13].[28] Instead, in response, Swinerton argues that the demand letter sent by the Owner to Swinerton demanding replacement of the defective roofs constitutes an "alternative dispute

---

[28] Insofar as Plaintiff argues that there was no "suit" here because, in its defenses set out in the Scheduling Order [Doc. 17] Swinerton references a "claim" rather than a "suit," *see* [Doc. 20 at 12], the court is not persuaded by this argument. Plaintiff cites no legal authority for the proposition that a defendant's statement explaining its defenses in a Scheduling Order could have a retroactive effect on whether a dispute constitutes a "suit" under an insurance policy.

resolution proceeding," which places the demand letter within the definition of "suit" under the Policy.  [Doc. 22 at 8-9].[29]  In so arguing, Swinerton relies upon the decision in *Melssen*, 285 P.3d at 328.  *See* [*id.* at 8].  In *Melssen*, the Colorado Court of Appeals held that the "notice of claim process" under the Colorado Defect Action Reform Act ("CDARA") "constitutes an alternative dispute resolution proceeding"—and thus, a "suit"—and was therefore sufficient to trigger an insurer's duty to defend.  285 P.3d at 332, 334-35.  The court addresses these arguments in turn, mindful that because Defendant bears the ultimate burden of proof, it must come forward with sufficient evidence to establish that there is a genuine issue of material fact that the Policy covers the roofing damage claim.

  ***Demand Letters Generally***.  As a preliminary matter, the court first recognizes that courts across the country have held that the tender of a demand letter does not constitute a "suit" in the traditional sense of the word.  A "suit" is widely understood to constitute "[a]ny proceeding by a party or parties against another in a court of law."  *Suit*, Black's Law Dictionary (10th ed. 2014).[30] In so finding, courts have looked to the operative effect and potential legal implications of such a letter, noting that, while such a demand may expose the recipient to the threat of potential *future* litigation, such a letter has no immediate operative legal effect and thus does not constitute a "suit." *See, e.g.*, *Samson v. Allstate Ins. Co.*, 949 F. Supp. 748, 753 (N.D. Cal. 1996) (finding that

---

[29] In its Reply, Plaintiff asserts facts and arguments not included in its Statement of Material Facts or Motion for Summary Judgment.  *See* [Doc. 23 at 4 (arguing that HCC requested "on multiple occasions" that Swinerton provide a notice of claim and that Swinerton failed to do so, and citing evidentiary documents not referenced in Motion); Doc. 28; Doc. 20].  The court does not consider these facts or argument in ruling on the Motion for Summary Judgment.  *See* NYW Civ. Practice Standard 56.1 ("[R]eplies . . . may not include any additional facts not already offered in the motion or response."); *Kipling v. State Farm Mut. Auto. Ins. Co*., 159 F. Supp. 3d 1254, 1268 (D. Colo. 2016) (arguments raised for the first time in a reply brief are deemed waived).

[30] The court relies upon the edition of Black's Law Dictionary that was operative at the time the contract was formed.

"coercive administrative or quasi-judicial proceedings that fall short of formal lawsuits may well fall within the meaning of 'suit' for the purposes of a duty to defend" under California law, but concluding that demand letter did not constitute a "suit" because "[t]o ignore the letters would not have had any consequences on [the recipient's] rights or liabilities later on."); *see also Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F. Supp. 2d 1068, 1075 (D. Idaho 1999); *Crescent City Baptist Church v. Church Mut. Ins. Co.*, No. CIV.A. 05-2200, 2006 WL 508060, at *5 (E.D. La. Feb. 22, 2006); *cf. Cincinnati Ins. Co. v. AMSCO Windows*, 593 F. App'x 802, 809 (10th Cir. 2014) (unpublished) (applying Utah law and finding that pre-litigation proceedings did not constitute a "suit" under the insurance policy).

While these cases do not apply Colorado law—which governs the question presently before the court—the court is persuaded by these courts' analyses.  Here, the Owner's letter "demand[ed] that [Swinerton] proceed immediately with full removal and replacement of all impacted roofs at the Project," [Doc. 20-23 at 3], but did not purport to impose any legal obligations on Swinerton. *Compare Anderson Bros. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 933-34 (9th Cir. 2013) (letters from the UPA identifying party as a "potentially responsible party" constituted "suits" because they were "formal steps in a legal process administered by the EPA that inexorably leads to the EPA seeking to hold property owners strictly liable for environmental contamination"). Thus, the demand letter cannot constitute a "suit" under the plain meaning of the term.  *See R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 870 A.2d 1048, 1063 (Conn. 2005) ("[A] demand letter falls short of a suit, . . . because it has no immediate legal effect and therefore cannot be considered legal action.").

**CDARA**.  Swinerton's reliance on *Melssen* does not change this court's conclusion. CDARA governs "actions claiming damages, indemnity, or contribution in connection with

22

alleged construction defects" and requires, *inter alia*, that a claimant deliver written notice of a construction defect claim to the construction professional before filing a lawsuit related to that claim, and further provides additional parameters and guidelines for resolving a construction defect dispute. Colo. Rev. Stat. §§ 13-20-802, 13-20-803.5. In finding that the notice-of-claim process provided by the statute constitutes an "alternative dispute resolution proceeding," the *Melssen* court expressly set forth—and relied on—the complete pre-litigation process provided by the statute:

> Under the CDARA notice of claim process, a property owner must serve the construction professional with a written notice of claim at least seventy-five days before filing an action. The notice of claim must reasonably describe the alleged defect and the alleged injuries or damages caused by the defect. The construction professional may then inspect the property. Following completion of the inspection process, the construction professional . . . has thirty days either to submit an offer to resolve the claim by paying a sum or to agree to remedy the defect. If the construction professional does not make such an offer, the homeowner rejects the offer, or the construction professional does not comply with its offer to remedy or settle the claim, only then may the homeowner bring an action against the construction professional.

285 P.3d at 334-35 (citing Colo. Rev. Stat. §§ 13-20-802.5(5), 13-20-803.5(1)-(3), (6)-(7) (citations omitted)). Because these provisions were enacted to "encourage the resolution of potential [construction] defect claims before suit is filed," the court concluded that participation in this process constitutes an "alternative dispute resolution proceeding." *Id.* at 335 (brackets and quotation omitted).

Notably, the *Melssen* decision repeatedly states that the notice of claims *process*—not the mere notice of claim—constitutes an "alternative dispute resolution proceeding." *See, e.g.*, *id.* at 333, 334, 335. In contrast, Swinerton argues that the Owner's demand letter *alone* is sufficient to constitute an "alternative dispute resolution proceeding" under the Policy. *See* [Doc. 22 at 9 (citing to Plaintiff's Exhibit 23, the demand letter, and arguing that "this claim . . . falls within the

definition of 'suit' as an alternative dispute resolution proceeding in which damages were claimed per the [Policy].")].  But Swinerton has cited no legal authority demonstrating, nor provided any adequate explanation as to why, a single demand letter could constitute an "alternative dispute resolution proceeding."  *See* [Doc. 22; Doc. 29].  The court respectfully disagrees with Defendant's argument, as its suggested interpretation of "alternative dispute resolution proceeding" expands the scope of *Melssen* and contravenes the plain language of the term.

"Alternative dispute resolution" is defined as "[a]ny procedure for settling a dispute by means other than litigation, as by arbitration or mediation."  *See Alternative Dispute Resolution*, Black's Law Dictionary (10th ed. 2014); *cf. Melssen*, 285 P.3d at 334.  Meanwhile, a "procedure" is "a series of steps followed in a regular orderly definite way," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010) (quoting *Webster's Third New International Dictionary* 1807 (1976)), or a "'particular way' of doing something,' . . . or 'a manner of proceeding.'"  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80 (1995) (quoting *Webster's Third New International Dictionary* 1807 (1976) and Random House Dictionary of the English Language 1542 (2d ed. 1987)); *see also Webster's Third New International Dictionary* 1807 (2002).  Thus, the terms "proceeding" or "procedure" imply some sort of process or a series of events, *see, e.g.*, *Melssen*, 285 P.3d at 334 (quoting Black's Law Dictionary), as opposed to a single event or occurrence, i.e., the Owner's letter demanding roof repairs.  *See Crescent City Baptist Church*, 2006 WL 508060, at *5 (holding that a demand letter "does not remotely constitute" an alternative dispute resolution proceeding).

Swinerton has also pointed to no evidence that permits this court to conclude that there is a genuine issue of material fact as to whether a CDARA "notice of claims process," *see Melssen*, 285 P.3d at 334, occurred in this case; for example, there is no evidence that Swinerton, after

receiving the demand letter, sent a written request to inspect the Property, inspected the Property, or sent to the Owner a written offer of compromise or a written offer to remedy the defect. *See* [Doc. 22; Doc. 29];[31] *see also* Colo. Rev. Stat. § 13-20-803.5(3) (providing that the construction professional may inspect the property after receiving a notice of claim upon written request and describing the requirements for sending written offer to cure the defect under CDARA). Indeed, the April 26, 2018 letter from the Owner to Swinerton indicating that Swinerton agreed to replace the roofs and Swinerton's cursory assertion that "Swinerton responded to the notice of claim with an offer to remedy the alleged defect as allowed by Colo. Rev. Stat. Ann. § 13-20-803.5(3)," *see* [Doc. 22 at 7 n.2], are insufficient to create a genuine dispute of fact as to whether the Owner and Swinerton engaged in any type of discussion or negotiation that constitute an "alternative dispute resolution proceeding," *see Stoker*, 2021 WL 681444, at *9 ("[A]ttorney argument is not sufficient to rebut a material fact at summary judgment, as [the movant] must direct the court to competent evidence" to support that denial); *see also Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009) (a mere "scintilla" of evidence is insufficient to prevent summary judgment); *see also* Fed. R. Civ. P. 56(c)(1)(A), and are insufficient to establish that the demand letter, alone, constitutes an "alternative dispute resolution proceeding." *Cf. Recall Total Info. Mgmt., Inc. v. Fed. Ins. Co.*, 83 A.3d 664, 671 (Conn. App. 2014), *aff'd*, 115 A.3d 458 (Conn. 2015) ("[T]o construe 'suit' to include mere negotiations following a demand[] would obliterate the distinction between 'suit' and 'claim.'").

---

[31] While there is evidence demonstrating that an inspection took place on March 8, 2018 at which Swinerton was present, the evidence reflects that the actions and/or communications that precipitated the inspection occurred well before, and thus could not have been triggered by, the Owner's March 8, 2018 letter. *See* [Doc. 20-19; Doc. 20-20 at 5 ("A site visit was performed on November 21 with Messrs. Newcomb and Hosfelt. An additional Swinerton representative was there, Louis Sakotani. A second inspection was completed with retained consultants at Wiss, Janney, [Eistner] Associates, Inc. and insured representative Sam Hosfelt on March 8.")].

***Contract Between Swinerton and the Owner***.  To the extent that Swinerton asserts that the demand letter is an alternative dispute resolution proceeding because Swinerton's contract with the Owner required them to engage in such proceedings, *see* [Doc. 22 at 9], the court also is respectfully not persuaded by this argument.  First, referring to general provisions of the contract between Swinerton and the Owner, without identifying particular contractual provisions and facts upon which the court can determine that (1) the contours of the asserted alternative dispute resolution; and (2) there is at least a genuine issue of material fact that the alternative dispute resolution contemplated by the contract was undertaken, is insufficient to create a genuine issue of material fact to preclude summary judgment.  Fed. R. Civ. P. 56(c).  Undeveloped arguments lacking legal authority or adequate explanation are unhelpful to the court and are deemed waived.  *See LNV Corp. v. Hook*, No. 14-cv-00955-RM-KHR, 2018 WL 10245906, at *2 (D. Colo. June 21, 2018).  Second, whether or not the Owner and Swinerton were contractually obligated to engage in dispute resolution procedures, Swinerton has failed to adduce sufficient evidence or authority that the March 8 demand letter, standing alone, creates a genuine issue of material fact that there was an alternative dispute resolution proceeding under such contract.

Indeed, the court's conclusions are further supported by the language of the Policy and its clear directive that a "claim" is distinct from a "suit."  While the Policy does not define "claim," *see* [Doc. 20-1], a "claim" is generally defined as a "demand for money, property, or a legal remedy to which one asserts a right."  *Claim*, Black's Law Dictionary (10th ed. 2014); *see also Webster's Third New Int'l Dictionary* 414 (2002) (defining "claim" as "a demand of a right or supposed right").  In contrast, as set forth above, a "suit" under the Policy includes a civil proceeding, an arbitration proceeding, or some other alternative dispute resolution proceeding, *see* [Doc. 20-1 at 31], which suggests that a suit is what occurs *after* a claim is made.  *See also cf. Suit*, Black's Law

26

Dictionary (10th ed. 2014) ("Any proceeding by a party or parties against another in a court of law."). The court finds that the Owner's letter—which demanded that Swinerton fully replace the defective roofs—plainly fits within the universally understood definition of a "claim." *See Anderson Bros.*, 729 F.3d at 933-34 (finding that a "claim" is separate and distinct from a "suit" and "most demand letters sent by a third party to a policyholder" are "claims"). This language makes clear that a claim and a suit have distinct meanings and are not interchangeable. And in addition to consistently using the disjunctive "or" to connect the two terms, *see, e.g.*, [Doc. 20-1 at 17, 22, 24]; *see also Armkel, LLC v. Pfizer Inc.*, No. CIV.A. 02-4206(FLW), 2005 WL 2416982, at *12 (D.N.J. Sept. 29, 2005) (use of the word "or" suggests that the parties intended for connected words to have different meaning), the Policy provides distinct rights and responsibilities with respect to "suits" versus "claims." For example, the Policy provides that the insured has a duty to cooperate in the investigation or settlement of a claim, but has a further duty to cooperate in the defense of a suit. [Doc. 20-1 at 27]. And while the Policy provides a duty to defend against suits, no such duty exists with respect to claims. *See* [*id.* at 17].

The court notes that, in its Response, Swinerton repeatedly classifies the Owner's demand letter as a "claim," *see* [Doc. 22 at 2, 4, 5, 6, 7, 9, 19, 20]—and the court agrees with this interpretation. In construing an insurance policy under Colorado law, the court must "construe the policy so that all provisions are harmonious and none is rendered meaningless," *Sachs v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010), and all contractual terms "must be interpreted in the actual context of those words and in light of all the surrounding circumstances. *First Christian Assembly of God, Montbello v. City & Cty. of Denver*, 122 P.3d 1089, 1093 (Colo. App. 2005). To give effect to all of the Policy's terms, "claim" and "suit" must have different meanings—a contrary conclusion would render the express definition of "suit" ineffective and

meaningless.  Thus, the Policy's express distinction between a "claim" and a "suit" precludes a finding that the demand letter—undoubtedly a claim—constitutes a "suit" under the Policy.  *Sachs*, 251 P.3d 546.

Having found that Swinerton has failed to carry its burden of adducing sufficient evidence to create a genuine issue of material fact that it was subject to an alternative dispute resolution proceeding to trigger coverage under the Policy, this court need not reach the issue of whether such alternative dispute resolution proceeding was pursued with HCC's consent as required by the policy.  *See* [Doc. 20-1 at 31].

2.   Whether CDARA Creates a Statutory Duty to Defend

In the alternative, Swinerton argues that the demand letter constitutes a "notice of claim" under CDARA, "which triggered [HCC's] obligation to defend Swinerton."  [Doc. 22 at 8].  The court respectfully disagrees.  CDARA provides that "[a]n insurer's duty to defend a construction professional or other insured under a liability insurance policy issued to a construction professional shall be triggered by a potentially covered liability described in . . . [a] notice of claim made pursuant to section 13-20-803.5."  Colo. Rev. Stat. § 13-20-808(7)(a)(I).  This duty to defend requires the insurer to (1) reasonably investigate the claim; and (2) reasonably cooperate with the insured in the notice-of-claims process.  Colo. Rev. Stat. § 13-20-808(7)(b)(I).  However, the statute expressly provides that "[t]his paragraph . . . does not require the insurer . . . to pay any sums toward settlement of the notice of claim that are not covered by the insurance policy."  Colo. Rev. Stat. § 13-20-808(7)(b)(II) (emphasis added).  Even assuming—without deciding—that the demand letter constituted a "notice of claim" under CDARA, the statute creates no separate obligation for HCC to cover the Owner's claim distinct from the Policy.  *Cf. Ass'n Ins. Co. v.*

*Carbondale Glen Lot E-8, LLC*, No. 15-cv-02025-RPM, 2016 WL 9735743, at *5 (D. Colo. Oct. 6, 2016). [32]

For all of these reasons, the court finds that Swinerton has not met its burden of showing a genuine issue of fact as to whether there was coverage under the Policy. *Peerless Indem.*, 2017 WL 633046, at *3 ("the insured has the burden to prove a material issue of fact exists concerning their entitlement to recovery under the insurance policy"). Accordingly, the court concludes that— as a matter of law—HCC's duty to defend was not triggered here. *Cf. Ass'n Ins. Co.,* 2016 WL 9735743, at *5-6.[33]

## III.    Duty to Indemnify

Next, HCC argues that there is no duty to indemnify Swinerton under the Policy. [Doc. 20 at 13-15]. "Under Colorado law, an insurer's duty to defend is broader than the duty to indemnify. If there is no duty to defend, then there is no duty to indemnify." *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 920-21 (10th Cir. 2008) (citing *Cyprus*, 74 P.3d at 299; *see also Constitution Assocs.*, 930 P.2d at 563-64 ("Where there is no duty to defend, it follows that there can be no duty to indemnify."). Because the court has determined that HCC did not owe Swinerton any duty to defend, it similarly has no duty to indemnify Swinerton. *Zurich*, 529 U.S.

---

[32] In *Ass'n Ins. Co.*, the insured argued that, despite the applicability of policy exclusions, the insurer had a statutory duty to defend the insured pursuant to Colo. Rev. Stat. §§ 13-20-808(7)(a)(I) and (II). 2016 WL 9735743 at *5. The court noted that the statute provides that, in defending a claim under that subsection, the insurer shall "[r]easonably investigate the claim" and "[r]easonably cooperate with the insured in the notice of claims process." *Id.* (quoting Colo. Rev. Stat. §§ 13-20-808(7)(b)(I)(A)-(B)). But because the statute also "expressly clarifies that this duty to defend 'does not require the insurer to . . . pay any sums toward settlement of the notice of claim that are not covered by the insurance policy," the court concluded that "[t]he statute does not create a duty to defend, beyond reasonable investigation and cooperation, where none is created by the insurance contract itself." *Id.*

[33] Having determined that HCC's duty to defend was not triggered, the court does not reach HCC's remaining arguments regarding its duty to defend.

at 920-21; *see also RMHB Constr., Inc. v. Builders Ins. Grp.*, 348 F. Supp. 3d 1093, 1106 (D. Colo. 2018) (upon entering summary judgment in favor of insurer as to duty to defend, finding no duty to indemnify).[34]

For these reasons, the court will **GRANT** summary judgment in favor of Plaintiff on Plaintiff's Claim One seeking declaratory relief that it has no duty to defend or indemnify Defendant.

## IV.    Plaintiff's Remaining Claims

Plaintiff's Complaint raises four Claims.  *See* [Doc. 1 at 7-10].  However, Plaintiff's latter three Claims are premised on a finding that coverage exists (and thus finding against Plaintiff on its Claim One).  *See* [*id.* at ¶ 56 ("If the Court determines that Swinerton's claim . . . falls within the Insuring Agreement of the Policy, HCC seeks a declaration that Policy exclusions preclude coverage for the claim.")]; [*id.* at ¶ 70 ("If the Court determines that Swinerton's claim . . . is covered under the Policy and not excluded, Plaintiff seeks a declaration that Swinerton forfeited coverage by failing to meet the Policy condition that it cooperate with the investigation of its claim.")]; [*id.* at ¶ 80 ("If the Court determines that Swinerton's claim to HCC is covered under the Policy and not excluded, Plaintiff seeks a declaration that . . . HCC owes no duty to Swinerton until the Builder's Risk policy plus any applicable deductible is exhausted.")].  In its Motion for Summary Judgment, HCC classifies its requested relief on Claim One as "case dispositive summary judgment," and seeks the entry of judgment for Plaintiff.  [Doc. 20 at 2, 16].  Defendant does not challenge that characterization and does not argue that Claims Two through Four can survive without denying Plaintiff's Motion for Summary Judgment.  *See* [Doc. 22].

---

[34] The court thus does not reach Plaintiff's remaining arguments as to whether there was a duty to indemnify here.

"Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996); *see also MacIntyre v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 13-cv-01647-WJM-MEH, 2014 WL 3809496, at *6 (D. Colo. Aug. 1, 2014). Plaintiff's latter three Claims are dependent on the court finding against Plaintiff on Claim One, and because the court has determined that HCC is entitled to summary judgment in its favor that no coverage under the Policy exists, Plaintiff's latter three Claims are moot. *Cf. EMC Ins. Cos. v. Mid-Continent Cas. Co.*, 884 F. Supp. 2d 1147, 1172 (D. Colo. 2012) (finding that, due to conclusion that no coverage existed, the portion of the motion for summary judgment asserting an argument as to the application of exclusion was moot because the argument presupposed coverage).

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   Plaintiff Houston Casualty Company's Motion for Summary Judgment on Dispositive Legal Issues [Doc. 20] is **GRANTED**;

(2)   The court **ENTERS** summary judgment in favor of Plaintiff Houston Casualty Company and against Defendant Swinerton Builders on Claim 1;

(3)   The court **DISMISSES AS MOOT** Claims Two through Four;

(4)   The Clerk of the Court shall **ENTER** final judgment consistent with this Memorandum Opinion and Order;

(5)   Plaintiff, as the prevailing party, shall be awarded its costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1; and

(6)    The Clerk of the Court shall **TERMINATE** this matter accordingly.


DATED:  December 2, 2021                    BY THE COURT:

                                            Nina Y. Wang
                                            United States Magistrate Judge