IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03558-NYW

HOUSTON CASUALTY COMPANY,

    Plaintiff,

v.

SWINERTON BUILDERS,

    Defendant.

## ORDER ON MOTION FOR RECONSIDERATION

Magistrate Judge Nina Y. Wang

    This matter comes before the court on the remaining portion of Defendant Swinerton Builders' Motion for Relief from Judgment and/or Motion to Alter or Amend the Judgment (the "Motion" or "Motion for Reconsideration") [Doc. 40, filed December 29, 2021]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated February 19, 2021. [Doc. 14]. Upon review of the Motion, the related briefing, and applicable case law, the remaining portion of the Motion is **DENIED**.

## BACKGROUND

    The court set forth the relevant factual background in its Memorandum Opinion and Order, *see* [Doc. 35], and does so again here only as necessary for ruling on the remainder of the Motion for Reconsideration. Plaintiff Houston Casualty Company ("Plaintiff" or "HCC") initiated this action against Defendant Swinerton Builders, LLC ("Defendant" or "Swinerton") on December 2, 2020, arising from an insurance coverage dispute between the Parties. [Doc. 1]. Swinerton, a general contractor, sought—and HCC denied—coverage for damaged roofs associated with a construction project in Denver, Colorado (the "Project") under an insurance policy issued by HCC

to Swinerton (the "Policy"). *See generally* [*id.*]. Plaintiff asserted four declaratory judgment claims against Swinerton, seeking declarations that: (1) Swinerton's claim did not fall within the Insuring Agreement of the Policy; (2) the Policy exclusions precluded insurance coverage; (3) if coverage were not excluded, Swinerton forfeited coverage by failing to cooperate in the investigation of its claim; and (4) the Policy was excess to Swinerton's Builders' Risk Policy. *See* [*id.*]. Defendant answered the Complaint on January 4, 2021, asserting defenses but no counterclaims. [Doc. 10].

Plaintiff filed a Motion for Summary Judgment on March 18, 2021, seeking summary judgment on "dispositive legal issues." [Doc. 20 at 1]. Specifically, Plaintiff sought summary judgment that (1) HCC had no duty to defend Swinerton with respect to Swinerton's insurance claim related to the damaged roofs, [*id.* at 13]; and (2) HCC had no duty to indemnify Swinerton with respect to that insurance claim. [*Id.* at 15]. On April 8, 2021, Defendant filed an Amended Answer and Counterclaims, asserting the following Counterclaims against Plaintiff: (1) a breach of contract claim based on the breach of the Policy ("Counterclaim 1"), [Doc. 21 at 17]; (2) a declaratory judgment claim seeking a declaration "of the rights and obligations of the parties under the [Policy]" that Plaintiff had a duty to defend and a duty to indemnify Defendant under the Policy ("Counterclaim 2"), [*id.* at 18]; and (3) a declaratory judgment claim seeking a declaration "of the rights and obligations of the parties under the [Policy]" that Plaintiff "cannot seek reimbursement of its claim adjustment expenses until it accepts coverage under [the Policy]" and that Defendant "is not obligated to reimburse [Plaintiff] for any claim adjustment expenses incurred to deny coverage" ("Counterclaim 3"). [*Id.* at 19-20, ¶ 76].

On December 2, 2021, this court issued a Memorandum Opinion and Order granting Plaintiff's Motion for Summary Judgment. [Doc. 35]. The court concluded that Defendant had

failed to carry its burden[1] to establish a genuine dispute of fact as to whether there was coverage under the Policy; namely, Defendant had failed to demonstrate a genuine dispute with respect to whether there was a "suit" under the Policy for which Plaintiff would have a duty to defend Defendant. [*Id.* at 28]. Thus, the court concluded that, as a matter of law, Plaintiff's duty to defend had not been triggered, and because there was no duty to defend, there could be no duty to indemnify. [*Id.* at 29-30].

The court entered summary judgment in favor of Plaintiff on its first claim and found Plaintiff's remaining claims moot. [*Id.* at 30-31]. Judgment was entered in favor of Plaintiff and the case was terminated. [*Id.* at 31]. On December 29, 2021, Defendant filed the instant Motion, seeking relief from the judgment entered in this case. [Doc. 40 at 1]. Defendant argued that the case should not have been closed because its Counterclaims had not yet been adjudicated. [*Id.* at 2-3]. On January 4, 2022, this court granted the Motion to the extent it sought relief from judgment and vacated the entry of judgment. [Doc. 41 at 7]. The court reserved ruling on the remainder of the Motion, which asks the court to reconsider the substance of its December 2, 2021 Memorandum Opinion and Order, until the Motion had been fully briefed. [*Id.* at 6]. In so doing, the court ordered the Parties to address in their respective briefing "which, if any, of Defendant's Counterclaims survive this court's ruling on the Motion for Summary Judgment, should this court

---

[1] Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at summary judgment by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). Then, the non-moving party must point to evidence creating a genuine dispute of material fact. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also Peerless Indem. Ins. Co. v. Colclasure*, No. 16-cv-00424-WJM-CBS, 2017 WL 633046, at *3 (D. Colo. Feb. 16, 2017) (explaining that the insured must demonstrate that the loss is covered by the applicable insurance policy).

deny the remainder of the Motion for Reconsideration." [*Id.* at 7]. The Motion is now fully briefed, [Doc. 43; Doc. 44], and I consider the Parties' arguments below.

## LEGAL STANDARD

Defendant moves for relief from judgment under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. [Doc. 40 at 2]. Grounds for relief from judgment under Rule 59(e) include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion is not, however, intended to be used "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

Similarly, Rule 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Relief under Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005). "Courts rarely grant Rule 60(b) motions, deferring instead to the need for finality and the appeals process." *Vreeland v. Tiona*, No. 17-cv-01580-PAB-SKC, 2020 WL 2832370, at *2 (D. Colo. May 29, 2020). Parties may not use Rule 60(b) as an avenue to "reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) (quotation omitted). Whether to grant relief under Rule 60(b) is in the sound discretion of the trial court. *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006).

## ANALYSIS

Defendant argues that in ruling on the Motion for Summary Judgment, this court misapprehended applicable law and thus, the December 2, 2021 Memorandum Opinion and Order should be reconsidered.  *See* [Doc. 40 at 4].  Defendant's argument rests on three separate bases: (1) an assertion that the court "ignored" Colorado's Construction Defect Action Reform Act ("CDARA") and misinterpreted the holding in *Melssen v. Auto-Owners Insurance Co.*, 285 P.3d 328 (Colo. App. 2012); (2) an assertion that the court misinterpreted the requirements of CDARA's notice of claim process; and (3) an assertion that the only issue before the court on Plaintiff's Motion for Summary Judgment was whether there was a "suit" under the Policy and that "other coverage issues" could be addressed in later summary judgment motions.  [*Id.* at 5-6].

**I.    The Court's Interpretation of *Melssen* and Consideration of CDARA**[2]

First, Defendant argues that the court misinterpreted the Colorado Court of Appeals' decision in *Melssen* when it ruled that the demand letter sent by the Owner of the Project to Defendant did not constitute an "alternative dispute resolution proceeding," and thus a "suit,"[3] under the Policy.  [*Id.* at 4].  For purposes of background, Defendant relied on *Melssen* in its Response to the Motion for Summary Judgment, arguing that the demand letter, alone, constituted an "alternative dispute resolution proceeding" and thus, the letter fell within the Policy's definition of "suit."  *See* [Doc. 22 at 8-9].  Defendant's argument was based on its interpretation that, under

---

[2] Defendant raises arguments in its Reply concerning *Melssen* that were not raised in its Motion for Reconsideration.  *See generally* [Doc. 44 at 1-4].  The court does not address arguments raised for the first time in a reply brief.  *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1268 (D. Colo. 2016).

[3] The Policy defined "suit" as "a civil proceeding in which damages because of 'bodily injury[,]' 'property damage[,]' or 'personal and advertising injury' to which this insurance applies are alleged," including "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."  [Doc. 20-1 at 31].

5

*Melssen*, the demand letter "[fell] within the definition of 'suit' as an alternative dispute resolution proceeding." [*Id.* at 9].

At the summary-judgment stage, the court was not persuaded by this argument. While the court acknowledged that *Melssen* "held that the 'notice of claim process' under [CDARA] 'constitutes an alternative dispute resolution proceeding'—and thus, a 'suit'—and was therefore sufficient to trigger an insurer's duty to defend," [Doc. 35 at 21 (quoting *Melssen*, 285 P.3d at 332, 334-35)], this court nevertheless concluded that, even in light of *Melssen*, the demand letter was not *itself* an "alternative dispute resolution proceeding" for purposes of this case. [*Id.* at 22-25]. The court distinguished *Melssen* from the instant case, noting that in *Melssen*, the court had not only "repeatedly state[d] that the notice of claims *process*—not the mere notice of claim—constitutes an 'alternative dispute resolution proceeding,'" [*id.* at 24 (citing *Melssen*, 285 P.3d at 333, 334, 335)], but had also "expressly set forth—and relied on—the complete [CDARA] pre-litigation process provided by the statute" in finding that the *process* constituted an "alternative dispute resolution proceeding." [*Id.* at 23 (quoting *Melssen*, 285 P.3d at 334-35)]. Ultimately, the court concluded that Defendant's suggested interpretation of "alternative dispute resolution proceeding" to include a single demand letter "expand[ed] the scope of *Melssen* and contravene[d] the plain language of the term." [*Id.* at 24].

Defendant argues that the court misinterpreted *Melssen* by "believ[ing] there must be a 'process' rather than a mere notice of claim to be considered a 'suit' within the policy." [Doc. 40 at 4]. In making its argument, Defendant relies on two sentences from the *Melssen* decision: first, a statement by the Court of Appeals "conclud[ing] that the trial court erred in submitting to the jury the question whether the CDARA notice of claim process otherwise constituted a 'suit' under the policy, but . . . further conclud[ing] the error was harmless because the <u>CDARA notice is a</u>

6

'suit' within the definition of the policy," and second, the court stating that "[h]aving determined that the CDARA notice constitutes a 'suit' under the insurance policy," the Court of Appeals did not need to address other arguments.  285 P.3d at 333, 336 (emphasis added); *see also* [Doc. 40 at 4].

The court respectfully disagrees with Defendant's argument.  First, Defendant does not explain why the two instances in the opinion wherein the Colorado Court of Appeals referred to a mere notice of claim negate its numerous other references to and lengthy discussion of the notice of claim *process*.  Indeed, as set forth in this court's Memorandum Opinion and Order, *Melssen* holds that the notice of claim process constitutes an "alternative dispute resolution proceeding." *See, e.g.*, *Melssen*, 285 P.3d at 334 ("We conclude the CDARA notice of claim process constitutes an alternative dispute resolution proceeding."); *id.* at 335 ("[W]e conclude that, as a matter of law, the CDARA notice of claim process constitutes an alternative dispute resolution proceeding.") (emphases added).  If there were any confusion as to whether the Colorado Court of Appeals based its decision on a notice of claim versus the notice of claim *process*, such confusion is belied by the *Melssen* court's analysis, which plainly focused on the claim process as a whole, as well as the General Assembly's purpose for enacting the relevant pre-suit CDARA provisions.  *Id.* at 334-35.  The *Melssen* court concluded that "[c]onsistent with [CDARA's] language and purpose, we conclude that, as a matter of law, the CDARA notice of claim **process** constitutes an alternative dispute resolution proceeding." *Id.* at 335 (emphasis added).  This court did not err in determining that *Melssen* did not support Defendant's argument that a single letter constitutes an "alternative dispute resolution proceeding."[4]

---

[4] While not discussed in this court's Memorandum Opinion and Order, the court notes that in *Melssen*, after determining that the notice of claim process constitutes an "alternative dispute resolution proceeding," the Colorado Court of Appeals went on to analyze whether the defendant

Moreover, the court notes that the two instances cited by Defendant in which the *Melssen* court referenced a mere notice of claim, rather than the process as a whole, were not made during its analysis as to whether there was an "alternative dispute resolution" under the policy. *See id.* at 333, 336. This court's discussion of *Melssen* occurred in the course of rejecting Defendant's argument that the demand letter constituted, specifically, an "alternative dispute resolution proceeding." *See* [Doc. 22 at 8 ("Houston had an Obligation to Defend Swinerton for this Alternative Dispute Resolution Proceeding"); *id.* at 9 ("[T]his claim . . . falls within the definition of 'suit' as an alternative dispute resolution proceeding."); *id.* ("Thus, the claim is considered an alternative dispute resolution proceeding that Swinerton submitted with Houston's implied or waived consent."); *id.* at 6 ("[Plaintiff] had an obligation to defend [Defendant] in the claim brought by the Owner because such claim was considered an 'alternative dispute resolution proceeding' that falls within he alleged policy definition of 'suit.'") (emphases added)]. Indeed, Defendant's argument in its Response that the demand letter constituted a "suit" under the Policy was based solely on its assertion that the demand letter constituted an "alternative dispute resolution proceeding." *See* [*id.* at 6, 8-9]. *Melssen* simply does not support a finding that a notice of claim (or a demand letter) alone constitutes an "alternative dispute resolution proceeding," and Defendant has not demonstrated any error of law here.[5]

---

insurer had consented to the notice of claim process. *See* 285 P.3d at 335-36. Relevant here, the policy provided a duty to defend against any "alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent." *Id.* at 332 (emphasis added). This further supports this court's conclusion that *Melssen* found that the process, not the mere notice of claim, is what constitutes an "alternative dispute resolution proceeding." Indeed, if the mere delivery of a notice of claim constituted an "alternative dispute resolution proceeding," the consent clause would be rendered meaningless.

[5] For this same reason, the court is not persuaded by Defendant's argument that "[t]his Court ignored CDARA that expressly states, '[a]n insurer's duty to defend a construction professional . . . shall be triggered by a potentially covered liability described in . . . [a] notice of claim made pursuant to section 13-20-803.5.'" [Doc. 40 at 4]. The court relied upon *Melssen* in rejecting

8

## II. The CDARA Notice of Claim Process

Next, Defendant asserts that the court "mistakenly assumed that inspections and negotiations are necessary to be considered [an] 'alternative dispute resolution proceeding,'" referencing this court's discussion of Defendant's failure to provide any evidence suggesting that a CDARA notice of claim process occurred in this case. [Doc. 40 at 5 (citing [Doc. 35 at 25])]. Contrary to Defendant's assertion, the court did not make such an assumption, nor did the court hold that any particular procedures are required in order to find the existence of an "alternative dispute resolution proceeding." Rather, in continuing its analysis of *Melssen* and its holding that the notice of claim process may constitute an "alternative dispute resolution proceeding," this court found that Defendant had "pointed to no evidence that permit[ted] this court to conclude that there [was] a genuine issue of material fact as to whether a CDARA 'notice of claims process' . . . occurred in this case." [Doc. 35 at 24]. The court then provided *examples* of some forms that such evidence could take, relying on the express dispute-resolution procedures set forth in CDARA: "for example, there is no evidence that Swinerton, after receiving the demand letter, sent a written request to inspect the Property, inspected the Property, or sent to the Owner a written offer of compromise or a written offer to remedy the defect." [*Id.* at 25 (citing Colo. Rev. Stat. § 13-20-803.5(3))]. Thus, the court did not "assume[] that inspections and negotiations are necessary" to

---

Defendant's argument that the demand letter constitutes an "alternative dispute resolution proceeding." [Doc. 35 at 22-25]. Its discussion was thus limited to that specific argument. [*Id.* at 24 ("The court respectfully disagrees with Defendant's argument, as its suggested interpretation of "alternative dispute resolution proceeding" expands the scope of *Melssen* and contravenes the plain language of the term.")]. The court did not, as Defendant suggests, find that there must "be[] a 'process' to trigger an insurer's duty to defend." [Doc. 40 at 4].

9

find an "alternative dispute resolution proceeding," and reconsideration on this basis is not warranted.[6]

### III. The Demand Letter

Finally, Defendant argues that reconsideration is warranted because "[t]he only issue in [Plaintiff's Motion for Summary Judgment] was whether or not there was a 'suit'" and "any dispute as to whether or not a letter is considered a 'notice of claim' under the CDARA to trigger the insurer's duty to defend is a question of fact for the jury." [Doc. 40 at 6]. According to Defendant, "this Court's reliance [on] Swinerton's lack of dispositive motion and avoidance of the issue in [Plaintiff's] motion is a clear error." [*Id.*].

The court is respectfully unable to ascertain the exact argument raised by Defendant. Insofar as Defendant suggests that the court should not have discussed whether the demand letter could constitute a CDARA notice because the "only issue" before the court was whether or not there was a "suit" triggering coverage under the Policy, the court does not find this discussion was error. In its summary judgment briefing, Defendant's first argument concerning a duty to defend

---

[6] Insofar as Defendant argues that it did provide evidence of a claim process, stating that "[a]s this Court pointed out, Swinerton did inspect the alleged defect before the [demand letter]" was sent, *see* [Doc. 40 at 5], the court did not reach this conclusion. Rather, the court noted that while there was evidence demonstrating that an inspection took place on March 8, 2018—the same day the demand letter was sent—it found that "the evidence reflects that the actions and/or communications that precipitated the inspection occurred well before, and thus could not have been triggered by, the Owner's March 8, 2018 letter." [Doc. 35 at 25 n.31]. Moreover, the court respectfully disagrees with Defendant's assertion that it "did point to evidence that Swinerton complied with the process because it offered to remedy [the defect], and the claimant sent Swinerton a written notice of acceptance." [Doc. 40 at 5 (citing [Doc. 22 at 12])]. The evidence cited by Defendant consists of a letter from the Owner to Defendant on April 26, 2018 stating that "Swinerton has agreed to proceed with replacement and reinstallation of roofs at the Project at no cost to the Owner." [Doc. 20-26 at 2]. Notwithstanding the fact that Defendant does not argue that this letter is sufficient to create a genuine dispute of fact with respect to whether there was a notice of claim process, *see* [Doc. 40 at 5], the court reiterates its previous conclusion that this letter does not show that Defendant "sent to the Owner a written offer of compromise or a written offer to remedy the defect." [Doc. 35 at 25].

10

was based on CDARA, asserting that the demand letter constituted a CDARA notice of claim which had triggered the duty to defend. *See* [Doc. 22 at 6-8]. Defendant then argued that such a claim constituted an "alternative dispute resolution proceeding" under the Policy. [*Id.* at 9]. In its Memorandum Opinion and Order, the court found that "[e]ven assuming—without deciding—that the demand letter constituted a 'notice of claim' under CDARA,'" this would not change the court's coverage ruling, as CDARA "creates no separate obligation for [Plaintiff] to cover the Owner's claim distinct from the Policy." [Doc. 35 at 28-29 (citing *Ass'n Ins. Co. v. Carbondale Glen Lot E-8, LLC*, No. 15-cv-02025-RPM, 2016 WL 9735743, at *5 (D. Colo. Oct. 6, 2016) and Colo. Rev. Stat. § 13-20-808(7)(b)(II) ("This paragraph . . . does not require the insurer . . . to pay any sums toward settlement of the notice of claim <u>that are not covered by the insurance policy</u>.") (emphasis added)].

    The court is not persuaded by Defendants' contention that it should reconsider its Order based on the court's brief, non-dispositive consideration of an argument that Defendant itself raised in its briefing. *See* [Doc. 22 at 19 ("Houston had a defense obligation to Swinerton because the Owner's March 8, 2018 letter is considered a notice of claim under the CDARA.")].[7] If Defendant sought to argue that the court need not consider whether the letter constituted a CDARA notice because there was coverage under the Policy, it could have done so at the summary-judgment stage. *Servants of the Paraclete*, 204 F.3d at 1012.

    While Defendant asserts that the Parties had "dispositive deadlines . . . of April 4, 2022 . . . to address other coverage issues," Defendant does not argue or explain why the court's limited discussion of CDARA constitutes a "clear error" or has any impact on any other pending issues in

---

[7] Indeed, even in its Motion for Reconsideration, Defendant intertwines the duty to defend under CDARA and the duty to defend under the Policy. [Doc. 40 at 4].

this case. *See generally* [Doc. 40]; *see also Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001) (defining "clear error" as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."). Indeed, Defendant's Counterclaims are silent on any duty under CDARA and are based solely on the Policy. *See* [Doc. 21 at 18, ¶ 62 ("Houston breached the Houston Policy by failing to defend and indemnify Swinerton against the Owner's Claim."); *id.* at 19, ¶ 70 ("Swinerton seeks a declaration of the rights and obligations of the parties under the Houston Policy and specifically seeks this Court to declare that Houston had a duty to defend and a duty to indemnify against the Owner's Claim under the Houston Policy."); *id.* at 20, ¶ 76 ("Swinerton seeks a declaration of the rights and obligations of the parties under the Houston Policy and specifically seeks this Court to declare that Houston cannot seek reimbursement of its claim adjustment expenses until it accepts coverage under the Houston Policy.") (emphases added). Because the court has already vacated the judgment and will enter an Amended Memorandum Opinion and Order clarifying that summary judgment has been granted only as to Plaintiff's first claim—finding no coverage under the Policy—the court does not find that reconsideration is warranted here.[8]

For the reasons set forth in this Order, the court finds that further reconsideration of its Memorandum Opinion and Order is not warranted. Accordingly, the remainder of the Motion to Reconsider is **DENIED**. The court will enter an Amended Memorandum Opinion and Order contemporaneously with the entry of this Order.

---

[8] For the same reasons, the court is not persuaded by Defendant's argument that "any dispute as to whether or not a letter is considered a 'notice of claim' under the CDARA to trigger the insurer's duty to defend is a question of fact for the jury." [Doc. 40 at 6]. This court made no factual finding on this issue, [Doc. 35 at 29], and thus did not invade the province of the jury.

## IV.      Defendant's Counterclaims

In its January 4, 2022 Order, the court directed the Parties to "raise arguments . . . addressing which, if any, of Defendant's Counterclaims survive this court's ruling on the Motion for Summary Judgment, should this court deny the remainder of the Motion for Reconsideration." [Doc. 41 at 7]. Plaintiff argues that none of the Counterclaims survive the court's grant of summary judgment in Plaintiff's favor on the coverage claim. [Doc. 43 at 3]. First, Plaintiff asserts that Counterclaims 1 and 2 are moot because they "both seek coverage" under the Policy, and because the court has determined there is no coverage, these Counterclaims "do not survive the Court's ruling on HCC's motion for summary judgment." [*Id.*]. As to Counterclaim 3, Plaintiff argues that this Counterclaim is moot because "HCC has informed [Defendant] that it will not seek a deductible payment." [*Id.*]. In support of this assertion, Plaintiff has attached a letter sent by Plaintiff's counsel to defense counsel on December 28, 2021 "to confirm that [Plaintiff] does not seek payment of a deductible." *See* [Doc. 43-1 at 2].

Defendant replies that each of its Counterclaims survive the court's grant of summary judgment. [Doc. 44 at 6]. First, Defendant asserts that "Swinerton has due process rights to bring a motion for summary judgment in its favor on all of its claims," citing the Due Process Clause of the Fifth Amendment to the United States Constitution. [*Id.*]. Defendant contends that it would be prejudiced if it were not permitted to complete discovery on its Counterclaims and to assert arguments on those Counterclaims. [*Id.*]. Additionally, Defendant argues that some specific portions of its Counterclaims survive the court's grant of summary judgment, namely (1) Counterclaim 1, insofar as it is based on allegations that Plaintiff "demand[ed] . . . reimbursement of those claim adjustment expenses [Plaintiff] spent to deny the claim," [Doc. 21 at 18, ¶ 62]; and (2) Counterclaim 3, insofar as it is based on Defendant's assertions that it does

not owe any of its deductible and should not be obligated to pay any deductible. [*Id.* at 19, ¶¶ 73-74]; *see also* [Doc. 44 at 6-7]. Finally, Defendant contends that the court should not consider the letter submitted by Plaintiff in its Response, arguing the court did not request new evidence and it would be inappropriate to make a mootness ruling outside of the context of a summary judgment motion. [*Id.* at 7].

The court agrees with Defendant that it would be improper for the court to make a dispositive ruling on Counterclaim 3 based on the letter submitted by Plaintiff without formal legal briefing and argument. Thus, the court cannot presently conclude that Counterclaim 3 is moot. Additionally, the court agrees with Defendant that, with respect to Counterclaim 1, it asserted allegations extending beyond mere coverage issues, and thus, the court declines to rule—at this juncture—that Counterclaim 1 is moot. *Cf. Direct Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 625 F. Supp. 2d 1171, 1173 n.1 (D. Utah 2008) ("The court's ruling [on coverage] does not dispose of [the plaintiff's] claim for breach of contract for not adjudicating or paying the claim. . . . Because [the claim is] factually and analytically distinct from the issue of coverage, [it is] not moot.").

Finally, with respect to Counterclaim 2, the court notes that Defendant offers no specific argument explaining why this Counterclaim is not moot. *See* [Doc.44 at 6-7]. And while Plaintiff argues that it is, its argument lacks any supporting legal authority. *See* [Doc. 43 at 3]. Although the court has concerns, based on its ruling on the coverage issue, as to whether it could "afford . . . meaningful relief" to Defendant on Counterclaim 2, *Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109-10 (10th Cir. 2010); *see also Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016) ("In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties."), the court

notes that it may consider its subject matter jurisdiction at any juncture in this case, and thus reserves ruling on the mootness of Counterclaim 2 at this point. Given the stated intention of Defendant to proceed with Counterclaims 1 and 3, the court does not find it would be inefficient or cumbersome to permit the Parties to complete discovery and file any additional dispositive motions with respect to all three Counterclaims, raising fully briefed arguments—supported by legal authority—on mootness and other relevant issues.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) The remainder of Defendant Swinerton Builders' Motion for Relief from Judgment and/or Motion to Alter or Amend the Judgment [Doc. 40] is **DENIED**;

(2) The Parties **SHALL CONFER** with respect to amendments to the Scheduling Order [Doc. 17] the Parties believe are necessary, if any, and **SHALL FILE** a joint motion to amend the Scheduling Order on or before **March 7, 2022**.

DATED: February 22, 2022

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge