UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Nina Y. Wang**

Civil Action No. 20-cv-03558-NYW

HOUSTON CASUALTY COMPANY,

      Plaintiff,

v.

SWINERTON BUILDERS,

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

This matter comes before the court on Houston Casualty Company's Motion to Dismiss Swinerton Builders' Counterclaims for Lack of Subject Matter Jurisdiction (the "Motion" or "Motion to Dismiss"). [Doc. 50, filed March 14, 2022].[1]  The court concludes that oral argument will not materially assist in the resolution of this matter.  Upon review of the Motion and associated briefing, the applicable case law, and the record before the court, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

The court draws the following facts from Defendant Swinerton Builders' Amended Answer and Counterclaims to Plaintiff's Complaint for Declaratory Judgment (the "Amended Answer" or "Counterclaims") [Doc. 21].[2]  This case arises out of an insurance-coverage dispute between

---

[1] Originally, this court fully presided over this matter pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated February 19, 2021.  [Doc. 14].  On July 22, 2022, Judge Wang was appointed as a United States District Judge and now presides over this case in this capacity. *See* [Doc. 55].

[2] Because Plaintiff launches a factual attack on this court's jurisdiction, the court need not accept the allegations in the Counterclaims as true.  *United States v. Rodriquez Aguirre*, 264 F.3d 1195,

Plaintiff Houston Casualty Company ("Plaintiff" or "HCC") and Defendant Swinerton Builders ("Defendant" or "Swinerton"). [Doc. 21 at 12-17, ¶¶ 6, 45-49, 53-55]. Specifically, HCC issued a commercial general liability policy "in connection with ground-up construction of two 32-story concrete and steel high rise apartment buildings" (the "Project") to Swinerton and AnaCondo, LLC, the owner of the Project (the "Owner"). [*Id.* at 12-13, ¶¶ 6-8]. After construction on the Project was substantially completed, [*id.* at 13, ¶¶ 10, 12], the Owner "asserted a construction defect claim regarding the completed roofs at the Project and demanded repairs," and Swinerton tendered the Owner's claim to HCC on October 31, 2017. [*Id.* at 13, ¶¶ 14-15].

On February 14, 2018, Swinerton notified HCC that the roof needed repairs to mitigate future damages and that Swinerton was ready to begin repairs. [*Id.* at 15, ¶ 27]. On April 20, Swinerton notified HCC that it intended to being repairs the following week, and on May 30, 2018, Swinerton "provided [HCC] with the substantial completion and occupancy certificates." [*Id.* at 15, ¶¶ 33, 36]. Swinerton repaired or replaced the roofs of the Project. [*Id.* at 17, ¶ 51]. Over the next several months, HCC issued a number of demands to Swinerton seeking reimbursement of expenses "as part of [Swinerton's] deductible regarding the Owner's Claim." *See, e.g.*, [*id.* at 15-17, ¶¶ 37-50].

On February 19, 2019, HCC provided Swinerton a letter stating that its insurance claim was denied for lack of coverage. [*Id.* at 17, ¶ 53]. Specifically, the Policy requires HCC to defend and indemnify Swinerton against any "suits," and HCC took the position that the Owner's claim did not constitute a "suit" as defined in the Policy. [*Id.*]. According to Swinerton, however, on June 11, 2019, HCC "provided another coverage opinion to Swinerton that [HCC] ha[d] not denied the claim outright." [*Id.* at 17, ¶ 54]. Swinerton claims that it has incurred "over two million

---

1203 (10th Cir. 2001).

dollars in repair costs and attorneys' fees and costs in defending and remedying the Owner's Claim." [*Id.* at 17, ¶ 55].

On December 2, 2020, HCC initiated this civil action seeking a declaratory judgment that, *inter alia*, it does not have a duty to defend Swinerton nor a duty to indemnify Swinerton with respect to the Owner's claim. *See* [Doc. 1]. Swinerton answered the Complaint on January 4, 2021, [Doc. 10], and filed an Amended Answer and Counterclaims on April 8, 2021. *See* [Doc. 21].[3] Swinerton raises the following Counterclaims against HCC: (1) breach of contract for failure to defend or indemnify Swinerton against the Owner's claim and for demanding reimbursement of claims handling expenses before determining coverage; (2) a claim for declaratory judgment seeking a declaration that HCC had a duty to defend and a duty to indemnify Swinerton against the Owner's claim; (3) a claim for declaratory judgment seeking a declaration that HCC cannot seek reimbursement of its claims-handling expenses "until it accepts coverage under the [HCC] Policy."[4] [*Id.* at 17-20, ¶¶ 56-76].

---

[3] Based on the court's review of the docket, it appears that the Amended Answer was improperly filed. Rule 15(a) of the Federal Rules of Civil Procedure states that a party may amend its pleading once as a matter of course within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Defendant's deadline to amend its pleading as a matter of right had expired when it filed its Amended Answer, it was required to either seek leave of court or obtain HCC's consent to amend its pleading. *Id.* Defendant did not seek leave of court, nor did Defendant indicate in its Amended Answer that it filed its amended pleading with Plaintiff's consent. *See* [Doc. 21]. Accordingly, the court could strike the Amended Answer as improperly filed under Rule 12(f). However, due to the length of time that has passed since the filing of the Amended Answer, and because the Motion to Dismiss is fully briefed, the court declines to do so and instead accepts the Amended Answer as filed.

[4] Defendant's Counterclaim references HCC's demands for both "claim adjustment expenses" and "reimbursement for a deductible." *See* [Doc. 21 at 20, ¶ 76; *id.* at 20]; *see also* [*id.* at 16, ¶¶ 38-39 (alleging that HCC demanded "expenses from Swinerton as part of its deductible regarding the Owner's Claim" and "reimbursement of . . . expenses from Swinerton as additional part of its deductible under the . . . Policy")]. Defendant appears to reference the demands for claims-handling expenses and the deductible payment interchangeably, *see* [Doc. 53 at 3 (arguing that HCC "demanded reimbursement of a deductible from Swinerton eight (8) times over the course of

On March 18, 2021, HCC filed a Motion for Summary Judgment seeking judgment on its coverage declaratory judgment claim. *See* [Doc. 20]. On December 2, 2021, this court issued a Memorandum Opinion and Order granting Plaintiff's Motion for Summary Judgment. [Doc. 35]. The court concluded that Defendant had failed to carry its burden to establish a genuine dispute of fact as to whether there was coverage under the Policy; namely, Defendant had failed to demonstrate a genuine dispute with respect to whether there was a "suit" under the Policy for which Plaintiff would have a duty to defend Defendant. [*Id.* at 28]. Thus, the court concluded that, as a matter of law, Plaintiff's duty to defend had not been triggered, and because there was no duty to defend, there was similarly no duty to indemnify. [*Id.* at 29-30].

The court entered summary judgment in favor of Plaintiff on its first claim and found Plaintiff's remaining claims moot. [*Id.* at 30-31]. Judgment was entered in favor of Plaintiff and the case was terminated. [*Id.* at 31]. On December 29, 2021, Defendant filed a Motion for Reconsideration, seeking relief from the judgment entered in this case. [Doc. 40 at 1]. Defendant argued that (1) the case should not have been closed because its Counterclaims had not yet been adjudicated, [*id.* at 2-3], and (2) the court erred in finding no duty to defend or indemnify. [*Id.* at 4-6]. On January 4, 2022, this court granted the Motion to the extent it sought relief from judgment and vacated the entry of judgment, reserving the remainder of the Motion until briefing was complete. [Doc. 41 at 7]. Then, on February 22, 2022 and after briefing was complete, this court denied the remainder of the Motion for Reconsideration, concluding that further reconsideration of the court's Memorandum Opinion and Order was not warranted. [Doc. 45 at 12]. The court entered an Amended Memorandum Opinion and Order reflecting that Defendant's Counterclaims were not dismissed. *See* [Doc. 46].

---

eleven (11) months.")], and the court will follow Defendant's practice here.

Thereafter, HCC filed the instant Motion to Dismiss.  [Doc. 50].  In the Motion, Plaintiff asserts that due to the court's order on the Motion for Summary Judgment and other developments in this litigation, the court lacks subject matter jurisdiction over Defendant's three Counterclaims.  [*Id.* at 1-2].  Specifically, Plaintiff argues that Counterclaims One and Three are not ripe for review and that Counterclaim Two has been rendered moot.  [*Id.* at 7-8].  In response, Defendant asserts that this court has subject matter jurisdiction over each of the Counterclaims because the court's ruling on the issue of coverage did not extinguish the Parties' pending controversies.  *See* [Doc. 53].  I consider the Parties' arguments below.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction."  *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)).

Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks.  The United States Court of Appeals for the Tenth Circuit has explained that

> [m]otions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms.  First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.  In addressing a facial attack, the district court must accept the allegations in the complaint as true.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation and citations omitted)).  The burden of establishing jurisdiction rests with the party asserting jurisdiction.  *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## ANALYSIS

### I.    The Nature of Plaintiff's Arguments

Before turning to the substance of the Parties' arguments, the court must first ascertain the true nature of those arguments.   In its Motion to Dismiss, Plaintiff argues that a portion of Counterclaim One and Counterclaim Three in its entirety are not ripe.   [Doc. 50 at 7]. Counterclaim One is a breach of contract claim asserting, *inter alia*, that HCC breached the Parties' insurance contract by demanding reimbursement of claims adjustment expenses that HCC spent denying the claim.  [Doc. 21 at 17-18, ¶¶ 56-62].  Counterclaim Three seeks a declaratory judgment that HCC "cannot seek reimbursement of its claim adjustment expenses until it accepts coverage under the [HCC] Policy" and that Swinerton "is not obligated to reimburse [HCC] for any claim adjustment expenses incurred to deny coverage."  [*Id.* at 20, ¶ 76].  According to Plaintiff, these Counterclaims are not ripe because "[w]hile HCC's third-party adjuster initially sought reimbursement of claim expenses pursuant to the Policy deductible, these efforts ceased long before HCC denied the claim," and "HCC does not seek payment of any deductible amount from Swinerton."  [Doc. 50 at 7].   In support of its ripeness argument, Plaintiff has submitted a declaration from Caroline Peros, HCC's casualty claims operations manager, who avers that "HCC does not and will not seek payment of any amount of deductible from Swinerton on the [Owner's] Claim."  [Doc. 50-1 at ¶¶ 1, 10].

Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). The court only has subject matter jurisdiction over claims that are ripe for review. *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). The complainant bears the burden of demonstrating that a claim is ripe for review. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

Mootness is a related, but distinct, concept from ripeness. "A case becomes moot when factual developments render a claim 'no longer live and ongoing,' such that a decision on the merits will not 'affect the behavior of the defendant toward the plaintiff.'" *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (quoting *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999)). "Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012). In determining whether a claim is moot, "[t]he crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (quotation omitted) (emphasis in original).

Although HCC frames its argument as one of ripeness, the court finds that for the most part, it is more appropriately construed as a mootness argument.[5]  From the court's view, HCC's position is that because the last time its claims adjuster sought payment of the deductible was in 2018, by the time Swinerton asserted its Counterclaims in 2021, there was no actual controversy between the Parties and thus the Counterclaim is not ripe for review.  [Doc. 50 at 7].  However, in its Counterclaims, Swinerton alleges that on October 3, 2018, Swinerton "asked [HCC] if it had to pay its deductible before [HCC] provide[d] coverage," and HCC responded that it would put its deductible recovery "'on hold' for the time being."  [Doc. 21 at 16-17, ¶¶ 47-48].  But even after that representation, HCC asserted another demand for the deductible payment on October 18, 2018.  [*Id.* at 17, ¶ 50].  The Counterclaims contain no allegations that after this October 18, 2018 demand, HCC then later informed Swinerton that it would no longer seek reimbursement of the deductible prior to the initiation of the Counterclaim.  *See generally* [*id.*].  In other words, based on the facts alleged in the Counterclaims, Swinerton remained under the impression that HCC continued to seek the deductible payment, thus creating an actual controversy between the Parties.  *See* [*id.* at 19, ¶¶ 72-73 ("An actual controversy has arisen and now exists between Swinerton and [HCC] regarding [HCC's] and Swinerton's rights and obligations under the . . . Policy. . . . Swinerton contends that it does not owe any or all of its deductible obligation until [HCC] assumes its defense and/or indemnity obligation under the . . . Policy.")].

The court's framing is supported by Swinerton's arguments in opposition to the Motion to Dismiss; while Swinerton characterizes Plaintiff's argument as a ripeness argument, *see* [Doc. 53 at 2-3], Swinerton's responses invoke principles of mootness.  *See* [*id.* at 2, 3 ("[HCC's]

---

[5] *But see infra* Section II (discussing one portion of Counterclaim Three under the ripeness doctrine).

declaration **does not negate** the pending controversy. . . ."; "[A]n actual controversy **still exists** as to the obligations of the parties. . . .") (emphases added)].  Moreover, Swinerton also argues that the actions of HCC "for which Swinerton seeks relief are likely to repeat" and thus, Swinerton has an "impending" injury, [*id.* at 3], which is more appropriately framed as a mootness argument, rather than ripeness argument.  *See, e.g.*, *Conkleton v. Zavaras*, 527 F. App'x 750, 754 (10th Cir. 2013) (concluding that the plaintiff's speculation that the challenged conduct could occur in the future was insufficient to demonstrate a present controversy and thus, the appeal was <u>moot</u>); *Steven R.F. by & through Fernandez v. Harrison Sch. Dist. No. 2*, 924 F.3d 1309, 1315 (10th Cir. 2019), *as revised* (June 12, 2019) (where there was no evidence that the asserted violation would occur again, the case was <u>moot</u>); *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (evaluating whether challenged conduct could occur again in the future under mootness principles).  For these reasons, the court primarily focuses its analysis on whether Counterclaims One and Three are moot *infra*, Section III.[6]

## II.    Ripeness

There is one portion of Plaintiff's argument, however, that the court believes properly asserts a ripeness argument—that "[w]hile paragraph 74 of Swinerton's counterclaims purports to seek a declaratory judgment with respect to any HCC policy, not just the particular HCC Policy at issue in this lawsuit[,] . . . there is no present 'actual controversy' regarding other, hypothetical policies."  [Doc. 50 at 7].  The referenced paragraph in Defendant's Counterclaim states as follows: "Swinerton contends that it should not be obligated to pay **any** deductible on **a** [HCC] policy until [HCC] accepts, agrees, and/or provides coverage."   [Doc. 21 at 19, ¶ 74 (emphasis added)].

---

[6] The court notes that even if the court did not construe Plaintiff's ripeness argument as a mootness argument, the court may raise the issue of mootness *sua sponte*.  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

Swinerton does not directly respond to this argument.  *See generally* [Doc. 53].  Rather, Swinerton responds generally that because the Peros declaration does not declare that Swinerton does not owe and should not be obligated to pay "any" deductible payment "on the subject policy" until HCC provides coverage, the Parties' controversy is ripe for review.  [*Id.* at 2].  In addition, Swinerton argues that HCC's "actions for which Swinerton seeks relief are likely to repeat," and thus, HCC's actions "as alleged herein and in other pending claims is why Swinerton seeks relief by this Court to avoid further impending injury."  [*Id.* at 3].  Swinerton cites no authority in support of its argument beyond stating that the Supreme Court has "explained that a claimant need not wait for the threatened injury to commence to obtain preventative relief—it's enough that the injury is impending."  *See* [*id.* at 2 (citing *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983))].

While it is not entirely clear whether, in Counterclaim Three, Swinerton seeks a broad declaration that Swinerton should not be obligated to pay a deductible prior to a coverage determination arising out of *any* claim or *any* HCC insurance policy, to the extent that it does, the court agrees with Plaintiff that this portion of the Counterclaim is not ripe.  The issue of ripeness turns on (1) the fitness of the issues for judicial decision and (2) any hardship to the parties of withholding court consideration.  *Pac. Gas & Elec. Co.*, 461 U.S. at 201.  In the declaratory judgment context, the Supreme Court has stated that the relevant question is  "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

"The doctrine of ripeness recognizes that courts will not consider uncertain or contingent future matters because the injury is speculative and may never occur."  *Morally v. Marabella*

*Partners, LLC*, No. 05-cv-02080-LTB-PAC, 2006 WL 2038388, at *4 (D. Colo. July 19, 2006). The purpose of the ripeness doctrine is to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985); *see also S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013) ("In evaluating ripeness the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Adjudicating whether Swinerton would be required to pay a deductible prior to a coverage determination pursuant to *any* insurance claim under *any* insurance policy through HCC, where there is no present demand for a deductible payment, *see* [Doc. 50-1 at ¶ 10], would contravene the purpose of the ripeness doctrine by requiring the court to entangle itself in an abstract disagreement; indeed, it would require the court and the Parties to speculate about the hypothetical policy at issue, the facts in play, and the context of the hypothetical insurance dispute.  "Fitness for judicial resolution may depend upon . . . whether consideration of the issue would benefit from a more concrete setting."  *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1237 (10th Cir. 2004).  Absent any concrete dispute, the court is without sufficient factual information to determine whether, in the future, Swinerton would be obligated to pay a deductible payment prior to a coverage determination in the context of a hypothetical coverage dispute.  *See Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1197 (10th Cir. 2000) (considering the need for additional factual development in evaluating the ripeness doctrine); *Valdez v. Metro. Prop. & Cas. Ins. Co.*, No. CIV 11-0507 JB/KBM, 2012 WL 1132414, at *29 (D.N.M. Mar. 31, 2012) ("Regardless how well-founded the Plaintiffs concerns about Travelers Insurance may be, speculation about how it might deal with policyholders in the future does not present a concrete case or controversy.").

Moreover, the court notes that beyond asserting that it has an "impending injury" arising out of the possibility that HCC could, in the context of a future insurance claim, again demand payment of a deductible before determining coverage, Swinerton does not argue that it will suffer hardship if the court withholds consideration of this portion of Counterclaim Three. [Doc. 53 at 2-3]; *see also Pac. Gas & Elec. Co.*, 461 U.S. at 201. The indefinite nature of Defendant's injury assertion is insufficient to meet its burden to demonstrate ripeness. Indeed, there are no present allegations that HCC has sought reimbursement of deductible payments with respect to other insurance claims arising under the Policy or any other HCC policy. *See generally* [Doc. 21]. Instead, all of Swinerton's allegations concerning demands for deductible payments relate specifically to the Owner's claim related to the roof damage. *See* [*id.* at 15-17, ¶¶ 37-44, 50]. While it is true that Swinerton *could* file another insurance claim pursuant to an HCC policy and Swinerton *could* seek a deductible payment on that claim prior to determining coverage, the remote, speculative possibility that this could occur is insufficient to constitute a certain impending injury. *See Utah v. U.S. Dep't of the Interior*, 210 F.3d at 1197 ("[T]he State of Utah will suffer no significant hardship [absent immediate judicial review] because the State can do no more than presently allege that if the lease is approved and the facility developed, it may detrimentally impact the environment."). Where, as here, the "claimed harms are contingent, not certain or immediate," the claim is not ripe for review. *Id.* at 1197-98; *cf. Metro. Prop. & Cas. Ins. Co. v. Cleveland*, No. 20-cv-00900-LTB-MEH, 2020 WL 8301215, at *4 (D. Colo. Nov. 23, 2020) ("The legal and factual premise for a potential future claim between [the parties] is simply too tenuous and hypothetical at this point in time to be justiciable."); *Palma*, 707 F.3d at 1157 ("The doctrines of standing and ripeness substantially overlap in many cases," such as "where the question of whether [the claimant] faces an imminent injury involves similar concerns as whether [the claimant's] suit

is ripe for adjudication.").  Accordingly, the court concludes that the portion of Counterclaim Three seeking a broad declaration that Swinerton is not obligated to pay the deductible prior to a coverage determination in the context of *any* insurance claim or *any* HCC policy, this Counterclaim is not ripe for review.  As a result, the Motion to Dismiss is **GRANTED** insofar as it seeks dismissal of this portion of Counterclaim Three for lack of subject matter jurisdiction.

## III.   Mootness

Federal courts may adjudicate only cases and controversies, *Rio Grande Silvery Minnow*, 601 F.3d at 1121, and thus do not have subject matter jurisdiction over a case if it is moot.  *Id.* at 1109.  "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005).  "Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit."  *Id.* at 1109.  "[W]hat makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff."  *Id.* at 1109-10.

The court now turns whether each of the pending Counterclaims has been rendered moot by the progression of this litigation.  For purposes of clarity, the court first addresses Defendant's Counterclaim Two before turning to Counterclaim One and then, finally, the remainder of Counterclaim Three.

### A.   Counterclaim Two

Plaintiff argues that Counterclaim Two has been rendered moot by the court's ruling on Plaintiff's Motion for Summary Judgment.  [Doc. 50 at 8].  Defendant's second Counterclaim seeks a declaration that HCC "had a duty to [defend and] a duty to indemnify Swinerton against

the Owner's Claim under the [HCC] Policy" and that Swinerton "is entitled to the costs incurred in defending and indemnifying against the Owner's Claim." [Doc. 21 at 19, ¶ 70]. Plaintiff maintains that because this court has already ruled that HCC had no duty to defend or indemnify Swinerton with respect to the Owner's claim, it is no longer possible to afford the relief that Swinerton seeks in this Counterclaim. [Doc. 50 at 8]. In response, Defendant argues that Counterclaim Two is not moot because Defendant "had outstanding written discovery and was planning on taking depositions of percipient witnesses to bring a summary judgment motion in its favor before the court mistakenly terminated the case." [Doc. 53 at 5]. According to Swinerton, for this reason, it has "ongoing due process rights to bring a motion for summary judgment in its favor on this claim (and all outstanding claims)." [*Id.*].

The court is respectfully unpersuaded by Defendant's argument. As an initial matter, Defendant does not actually address the substance of Plaintiff's argument: that because the court has already concluded that HCC did *not* owe Swinerton a duty to defend or a duty to indemnify, Defendant's Counterclaim seeking a declaration that HCC *did* owe those duties is now moot. *See generally* [*id.*]. Stated another way, Defendant does not explain how an additional determination on the legal issue in Counterclaim Two would "affect the behavior of [Plaintiff] toward [Defendant]," *Rezaq*, 677 F.3d at 1008, or "have some effect in the real world." *Rio Grande Silvery Minnow*, 601 F.3d at 1110. Nor does Defendant explain how additional discovery would or could impact the court's prior legal determination. *See* [Doc. 53].

A claim is moot if "the relief sought can no longer be given or is no longer needed." *Unified Sch. Dist. No. 259, Sedgwick Cnty. v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1150 (10th Cir. 2007). Where a party's requested declaratory relief would not affect the defendant's future conduct toward the plaintiff, the declaratory judgment claim is moot. *Eur. Motorcars of Littleton,*

*Inc. v. Mercedes-Benz USA, LLC*, No. 17-cv-00051-MEH, 2017 WL 2629133, at *4 (D. Colo. June 19, 2017).  Here, the court has already determined that Plaintiff did not owe Defendant a duty to defend or indemnify with respect to the Owner's claim, and Defendant does not explain how an additional declaration from the court would affect the Parties' rights or obligations as to the Owner's claim.  *See* [Doc. 53].  Because the relief sought in Counterclaim Two is no longer available, the court concludes that the Counterclaim is moot.[7]

Indeed, courts have regularly concluded that where the legal question underlying a declaratory judgment claim has been answered, the declaratory judgment claim is moot.  *See, e.g.*, *Foster v. USAA Cas. Ins. Co.*, No. CIV.A. 10-5755, 2013 WL 6869034, at *7 (E.D. Pa. Dec. 31, 2013) (after finding against insured on issue of coverage, insurer's declaratory judgment claim concerning coverage was moot); *Progressive Garden State Ins. Co. v. Metius*, No. CV 18-2893 (WJM), --- F. Supp. 3d ----, 2022 WL 214546, at *9 (D.N.J. Jan. 25, 2022) (after finding no coverage, concluding that the insurer's declaratory judgment claim seeking a declaration of wrongful denial of coverage was moot); *Jarrell v. Viking Ins. Co. of Wis.*, No. 15-cv-02676-RBJ, 2017 WL 1154025, at *2 (D. Colo. Mar. 28, 2017) (after finding no coverage, concluding that declaratory judgment claim seeking declaration that insureds were only entitled to minimum amount of coverage was moot); *cf. Phoenix Ins. Co. v. Cantex, Inc.*, No. 13-cv-00507-REB-NYW, 2015 WL 6859530, at *4, *5 n.8 (D. Colo. Nov. 9, 2015) (after finding in favor of the insurer on a breach of contract claim due to a lack of insurance coverage, determining that a counterclaim seeking a declaration that the insurer did not breach the contract was moot).

---

[7] And because there was no duty to defend or indemnify, Defendant's request for a declaration that it is entitled to recover its defense costs is similarly moot.  *See Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 920-21 (10th Cir. 2008) (where there is no duty to defend, there is no duty to indemnify).

Moreover, Defendant has cited no legal authority for the proposition that it has a due process right to bring a motion for summary judgment on a legal issue that has already been determined by the court that, in turn, results in the court being divested of subject matter jurisdiction. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016) (observing that a federal court cannot assume subject matter jurisdiction because, if none exists, it "may go no further"). In addition, Defendant did not seek relief under Rule 56(d), which provides that if a party believes it cannot present facts necessary to justify its opposition to a summary judgment motion, it may move the court to "defer considering the motion" or "allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(1)-(2). Instead, Defendant responded to Plaintiff's Motion for Summary Judgment on April 8, 2021, arguing as a matter of law that the Owner's claim constituted a "suit" under the Policy. *See* [Doc. 22 at 5-9]. "'[R]elief under Rule 56(d) is not automatic,' and is . . . waived where a party responds to a motion for summary judgment." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 4170997, at *7 (D. Colo. Sept. 14, 2021) (quoting *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) and citing *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986)).

Furthermore, the Local Rules of Practice for this District, with which counsel are expected to be familiar, *see Pelletier v. United States*, No. 11-cv-01377-WJM-CBS, 2015 WL 3907663, at *1 (D. Colo. June 24, 2015), *aff'd*, 653 F. App'x 618 (10th Cir. 2016), provide that a motion may be ruled on "at any time after it is filed." D.C.COLO.LCivR 7.1(d). Plaintiff filed its Motion for Summary Judgment on March 18, 2021. [Doc. 20]. Thus, Defendant was on notice that the court could rule on Plaintiff's Motion for Summary Judgment—i.e., could rule as a matter of law that there was no duty to defend or duty to indemnify against the Owner's claim—prior to the Parties'

completion of discovery, but took no action to request that the court delay ruling on the Motion

for Summary Judgment.

For these reasons, the court agrees with Plaintiff that Counterclaim Two has been rendered

moot.[8]  The Motion to Dismiss is **GRANTED** insofar as it seeks dismissal of Counterclaim Two.

### B.      Counterclaim One

Defendant's first Counterclaim alleges a breach of contract arising out of (1) Plaintiff's

alleged failure to defend or indemnify Defendant and (2) Plaintiff's alleged demand of claims

adjustment expenses from Defendant.  [Doc. 21 at 18, ¶¶ 61-62].  Insofar as the Counterclaim

asserts a breach of contract arising from the failure to defend or indemnify, HCC argues that the

Counterclaim is moot because the court "has already ruled on the legal question that forms the

basis of" this portion of Counterclaim One.  [Doc. 50 at 8].  In addition, Plaintiff argues that to the

extent Defendant seeks a declaration that demanding a deductible payment constituted a breach of

contract, because HCC no longer seeks reimbursement of claim expenses, there is no present

controversy to adjudicate and thus, the court lack subject matter jurisdiction over the

Counterclaim.[9]  [*Id.* at 7].  In response, Swinerton does not expressly address Counterclaim One

insofar as it asserts a breach of contract based on the failure to defend or indemnify.  *See* [Doc.

53].  As to the remaining portion of Counterclaim One asserting a breach of contract arising out

---

[8] While the court acknowledges that the court's closing of the case in December preventing
Defendant from completing discovery, the fact that Defendant anticipated taking more discovery
does not ultimately change the fact that because the court cannot grant the relief Defendant seeks
in Counterclaim Two, the Counterclaim is moot.  Moreover, the court notes that at a March 16,
2022 Status Conference, Defendant agreed that the instant Motion to Dismiss should be decided
before the Parties proceeded with discovery.  *See* [Doc. 51].  If Defendant believed that additional
discovery could impact the mootness of Counterclaim Two, it did not raise such an issue when it
had the opportunity to do so.

[9] While Plaintiff raises this argument in the ripeness context, for the reasons discussed *supra*
Section I, the court construes this argument as a mootness argument.

of the demand for reimbursement, Swinerton argues that the court has subject matter jurisdiction over this Counterclaim because HCC "did not declare that it breached the [P]olicy terms by demanding reimbursement of the claim adjustment expenses [HCC] spent to deny the [Owner's] claim." [*Id.* at 2]. The court addresses each portion of the Counterclaim below.

**Failure to Defend or Indemnify.** Insofar as HCC argues that the portion of the breach-of-contract Counterclaim based on the alleged failure to defend or indemnify is moot, the court agrees. This portion of the Counterclaim is premised on an assertion that HCC "breached the . . . Policy by failing to defend and indemnify Swinerton against the Owner's Claim." [Doc. 21 at 18, ¶ 61]. But this court has concluded that under the Policy, HCC did not owe Swinerton a duty to defend or a duty to indemnify as to the Owner's claim. *See* [Doc. 46 at 29-30]. "Colorado courts hold that where an insurer is not obligated to provide a defense or indemnification to an insured, the insurer could not have breached its contractual obligations." *Landmark Am. Ins. Co. v. VO Remarketing Corp.*, No. 13-cv-01386-WJM-KMT, 2014 WL 2673593, at *5 (D. Colo. June 13, 2014), *aff'd*, 619 F. App'x 705 (10th Cir. 2015); *Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487, 492 (Colo. App. 2003) (where there was no coverage, there was no duty to defend or indemnify and thus no breach of contract). Because the court has already determined there was no duty, there can be no breach of contract based on a failure to fulfill that duty. Thus, "a *present* determination of the issues offered" would not have any effect in the real world, *Rio Grande Silvery Minnow*, 601 F.3d at 1110, and this portion of Counterclaim One is moot. *See Builders Mut. Ins. Co. v. Half Ct. Press, L.L.C.*, No. 6:09-cv-00046, 2010 WL 3743657, at *6 (W.D. Va. Sept. 21, 2010) ("Half Court's counterclaim, asserting breach of contract or duty for not defending, is moot, given that I have determined that no duty to defend Half Court exists under the policy."); *Progressive Garden State Ins. Co. v. Metius*, No. CV 18-2893 (WJM), 2022 WL 214546, at *9

(D.N.J. Jan. 25, 2022) (after finding in favor of insured on coverage issue, finding that counterclaims seeking damages for breach of contract were moot); *Axis Reinsurance Co. v. Resmondo*, No. 808-cv-569-T-33TBM, 2009 WL 1537903, at *4 (M.D. Fla. June 2, 2009) ("The rulings on Counts I and II [finding no insurance coverage] render moot [the insured's] counterclaim for breach of contract."). Accordingly, the Motion to Dismiss is **GRANTED** with respect to this portion of Counterclaim One.

>        ***Demanding Reimbursement for Claims Handling Expenses***. Next, Plaintiff argues that Counterclaim One is moot insofar as it asserts that HCC "breach[ed] the . . . Policy by demanding reimbursement of those claim adjustment expenses [HCC] spent to deny the claim." [Doc. 50 at 7; Doc. 21 at 18, ¶ 62]. Plaintiff argues that because "HCC has made clear that it does not seek any payment under the deductible, . . . the parties do not have 'adverse positions with respect to their existing obligations.'" [Doc. 50 at 7 (quoting *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir. 2011) (emphasis omitted))].

>        The court respectfully disagrees that the Peros declaration setting forth HCC's *present* conduct can somehow absolve HCC of alleged *past* wrongful conduct, which forms the basis for this portion of Counterclaim One. In its Counterclaims, Swinerton alleges that prior to making a coverage determination, HCC made several demands to Swinerton seeking reimbursement of its claims handling expenses arising out of the Owner's claim. *See* [Doc. 21 at 15-17, ¶¶ 37-50]. As this court understands Swinerton's theory, regardless of whether HCC continues to demand the claims handling expenses now, these demands—when they were made—constituted a breach of the insurance Policy. [*Id.* at 18, ¶ 62]. Unlike the first portion of the Counterclaim, there is no prior court determination on the legal issue underlying this part of the Counterclaim. And HCC, who bears the burden of demonstrating mootness, fails to adequately explain why the fact that it

has since ceased its allegedly wrongful conduct renders this portion of the breach of contract claim moot.  *See* [Doc. 50 at 7-8].  Accordingly, the court concludes that Plaintiff has failed to demonstrate that this portion of Counterclaim One is moot, and the Motion to Dismiss is **DENIED** to the extent it requests dismissal of this portion of Counterclaim One on subject matter jurisdiction grounds.

Nevertheless, in reviewing the allegations set forth in Counterclaim One, this court is not persuaded that Swinerton states a cognizable claim for breach of contract arising from HCC's alleged demand for reimbursement of claims handling expenses.  Swinerton alleges that "Houston also breach [sic] the Houston Policy by demanding reimbursement of those claim adjustment expenses Houston spent to deny the claim." [Doc. 21 at 18, ¶ 62].  In doing so, Defendant fails to identify any contract provision that was allegedly breached.  *See generally* [*id.*].  Nor is it clear that there is a separate claim of damages arising from the alleged breach, particularly if Swinerton never paid the amount demanded for reimbursement of claims handling expenses and HCC has affirmatively represented that it does not seek any portion of the deductible, including any reimbursement for claims handling expenses. *See* [*id.* at 18, ¶ 63.].  Therefore, this court **ORDERS** Defendant to **SHOW CAUSE** no later than **August 23, 2022** as to why this theory of breach of contract as averred in Counterclaim One [Doc. 21] should not be dismissed for failure to state a cognizable claim pursuant to Rule 12(b)(6).  *See Phillips v. Pub. Serv. Co. of N.M.*, 58 F. App'x 407, 409 (10th Cir. 2003) ("[I]n this circuit, sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").  To the extent that Swinterton seeks to amend its Counterclaim One, it must comply with the direction as set forth below.

### C.      Counterclaim Three

Counterclaim Three seeks a declaration that (1) HCC "cannot seek reimbursement of its claim adjustment expenses until it accepts coverage under the . . . Policy," (2) that Swinerton "is not obligated to reimburse [HCC] for any claim adjustment expenses incurred to deny coverage," and (3) that HCC "cannot seek reimbursement from [HCC's] expenses incurred in the Owner's Claim on the . . . Policy." [Doc. 21 at 20, ¶ 76; *id.* at 21].[10]   The court has already determined that to the extent this Counterclaim seeks a broad declaration concerning any claim under the Policy, or any claim under any HCC policy, the Counterclaim is not ripe, *see supra* Section II, and thus limits its analysis to the portion of the Counterclaim specifically requesting a declaration that Swinerton "should not be obligated to pay any deductible sought by [HCC] until [HCC] accepts coverage," insofar as it relates to the Owner's claim under the Policy, or that HCC "cannot seek reimbursement from [HCC's] expenses incurred in the Owner's Claim on the [HCC] Policy." [*Id.* at 20-21].

Plaintiff argues that the court lacks subject matter jurisdiction over this Counterclaim because Plaintiff has represented that it will no longer seek payment of the deductible with respect to the Owner's claim.  [Doc. 50 at 7].  Defendant's arguments in opposition are somewhat difficult to ascertain.   First, Defendant asserts that the Peros declaration is insufficient to render the

---

[10] In its actual Counterclaim Three, Defendant seeks two declarations: (1) that HCC cannot seek reimbursement of claims adjustment expenses until it accepts coverage; and (2) that Swinerton is not obligated to reimburse HCC for any claims adjustment expenses incurred in denying coverage. [Doc. 21 at 20, ¶ 76].  However, in its prayer for relief, Swinerton expands its request, seeking four declarations: (1) that Swinerton should not be obligated to pay any deductible until HCC accepts coverage, (2) that Swinerton is not obligated to reimburse HCC for claims adjustment expenses incurred to deny coverage; (3) that HCC cannot seek reimbursement for a deductible until it has assumed its defense and/or indemnity obligations; and (4) that JCC cannot seek reimbursement from HCC's claims incurred in the Owner's claim.  [*Id.* at 20-21].  Taking these requests together, the court construes Counterclaim Three as seeking the above three declarations.

Counterclaim moot because it "does not address Swinerton's [C]ounterclaims." [Doc. 53 at 2-3]. Defendant suggests that the declaration that HCC "will not seek payment of any amount of deductible from Swinerton on the [Owner's] **Claim**," *see* [Doc. 50-1 at ¶ 10 (emphasis added)], fails to moot Swinerton's Counterclaims concerning "whether a [deductible] was owed or may be owed pursuant to the terms of the" Policy." [Doc. 53 at 2-3]. Next, Defendant asserts that despite the Peros declaration, Swinerton has an "impending" injury because HCC's "actions for which Swinerton seeks relief are likely to repeat as shown by the allegations in Swinerton's [C]ounterclaims." [*Id.* at 3]. Finally, Swinerton maintains that HCC's voluntary cessation of its conduct cannot render its Counterclaim moot. [*Id.* at 4].[11] The court addresses these arguments in turn.

>          ***Voluntary Cessation***. The court first addresses Defendant's argument that Plaintiff's actions are "likely to repeat"[12] and that the mootness doctrine should not apply to Counterclaim Three under the voluntary cessation doctrine. [Doc. 53 at 3, 4]. "One exception to a claim of mootness is a defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008). "In other words, this exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id.* However, "[t]he voluntary cessation exception does not apply, and a case is moot, 'if the

---

[11] Although Plaintiff only raised an express mootness argument with respect to the Counterclaims concerning a duty to defend or indemnify, *see* [Doc. 50 at 8], Defendant's argument concerning voluntary cessation is limited to the Counterclaims asserting an alleged demand for deductible payment, not any alleged failure to defend or indemnify. *See* [Doc. 53 at 4-5]. The court acknowledges Plaintiff's statement in its Reply that "HCC did not raise mootness with respect to the deductible counterclaims in its Motion." [Doc. 54 at 4]. However, because the court has construed Plaintiff's ripeness argument as a mootness argument, the court will address Defendant's argument concerning voluntary cessation.

[12] *See supra* n. 11.

defendant carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 (10th Cir. 2019) (footnote omitted).   The Supreme Court has characterized this burden as "stringent" and "heavy."  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  However, the Tenth Circuit has expounded on the Supreme Court's use of the phrase "absolutely clear," explaining that the Supreme Court "sometimes omits 'absolutely' from its subsequent analysis, instead using the 'reasonably be expected' language as shorthand."  *Brown v. Buhman*, 822 F.3d 1151, 1167 n.16 (10th Cir. 2016) (citing cases).  "[A]lthough the defendant's obligation is to show it is absolutely clear that 'the allegedly wrongful behavior could not reasonably be expected to recur,' the Supreme Court has never suggested a defendant must make resumption of his conduct impossible."  *Id.*  As such, for the voluntary cessation doctrine to apply, the court must be "convinced that 'the allegedly wrongful behavior could not *reasonably* be expected to recur,' . . . not that there is no possibility of future enforcement," as "[t]he latter showing would likely be impossible in most cases."  *Id.* at 1175 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (emphasis in original)).

Swinerton contends that HCC "voluntarily agreed to stop seeking its deductible before coverage was provided but is free to resume this practice" and that it "has a reasonable expectation that this behavior will continue."  [Doc. 53 at 4].  HCC counters that it has "represented to this Court that it does not seek payment of a deductible with respect to [the Owner's] claim," rendering Counterclaim Three moot.  [Doc. 54 at 4].  According to HCC, "Swinerton's counterclaim, insofar as it addresses a past – not present – demand for payment of a deductible is nothing 'greater than the mere satisfaction of a declaration [it] was wronged.'"  [*Id.* (quoting *Bauchman v. W. High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997))].

Although HCC's burden is "stringent," the court concludes that it is met here.  To carry its burden, HCC must do more than offer "a mere informal promise or assurance that the challenged practice will cease," and must instead undertake "changes that are permanent in nature" and which "foreclose a reasonable chance of recurrence of the challenged conduct."  *Prison Legal News*, 944 F.3d at 881 (quotations and ellipses omitted).  This burden may be met by a declaration, made under penalty of perjury, that the challenged conduct will not continue.  *See id.*; *see also Brown*, 822 F.3d at 1170.

Here, an HCC official has declared under penalty of perjury that HCC will not seek payment on the deductible with respect to the Owner's claim.  [Doc. 50-1 at ¶ 10].  To find that this declaration is insufficient to convince the court that the alleged wrongful conduct is not reasonably expected to recur, the court would have to conclude that Ms. Peros and HCC's counsel have "engaged in deliberate misrepresentation to the court."  *Brown*, 822 F.3d at 1170.  Swinerton does not present any basis for drawing such a conclusion, *see* [Doc. 53], and the court finds none here, particularly where HCC's last demand for the deductible payment was nearly four years ago, *see* [Doc. 50-1 at ¶ 6], and it has since obtained a court ruling that it had no duty to defend or indemnify in this case.  *See* [Doc. 46].  *Compare McCubbin v. Weber Cnty.*, No. 1:15-cv-132, 2019 WL 4736966, at *16 (D. Utah Sept. 27, 2019) (finding declaration made under penalty of perjury insufficient where adjudicative facts directly contradicted the representations in the declaration and the court thus had reason to question the declarant's credibility).  Because the court is convinced that the challenged conduct cannot be reasonably expected to recur, *Brown*, 822 F.3d at 1175, the court finds the voluntary cessation doctrine inapplicable here.[13]

---

[13] For the same reasons, insofar as Defendant's argument that HCC's actions are likely to repeat, causing an "impending injury" to Defendant, [Doc. 53 at 3-4], could be analyzed in the context of mootness, the court is unpersuaded by this argument.  Because HCC has declared, under penalty

*The Declarations*.  Next, Swinerton asserts that the Peros declaration "does not negate the pending controversy because it obfuscates the issues as alleged" in Counterclaim Three.  [Doc. 53 at 2].  Swinerton highlights the fact that the declaration does not declare that Swinerton does not owe its deductible until HCC accepts or provides coverage on the Owner's claim.  [*Id.*].  The court is respectfully unpersuaded by this argument.  Swinerton argues that because Ms. Peros did not declare that Swinerton does not owe a deductible obligation until HCC "assumes its defense and/or indemnity obligation under the subject policy," the issue of "whether a [deductible] was owed or may be owed pursuant to the terms of the subject policy" remains.  [*Id.* at 2-3].  But Swinerton does not explain how a present determination of whether Swinerton owes a deductible under the Policy would impact the HCC's behavior toward Swinerton *with respect to the Owner's claim*.  *Rezaq*, 677 F.3d at 1008; *see* [Doc. 53 at 2-3].  Regardless of any court determination as to whether Swinerton does or does not owe the deductible, HCC has declared, under penalty of perjury, that HCC will not seek reimbursement of the deductible.  [Doc. 50-1 at ¶ 10].  While Swinerton states that HCC "will be able to continue to improperly seek a deductible again on the subject claim," [Doc. 53 at 6], it submits no evidence in support of this speculative assertion so as to call into question HCC's declaration that it will not do so.  Accordingly, the fact that the Peros declaration does not make a legal determination as to whether a deductible was owed does not negate applicability of the mootness doctrine here.  The court concludes that this portion of Counterclaim Three is moot.  And for this reason, the Motion to Dismiss is **GRANTED** to the extent it seeks dismissal of this portion of Counterclaim Three for lack of subject matter jurisdiction.

---

of perjury, that it will not seek reimbursement of the deductible with respect to the Owner's claim, there is no impending injury arising out of that claim.

## IV.    Leave to Amend

In its Response to the Motion to Dismiss, Swinerton requests leave to amend its Counterclaims in the event that the court grants the Motion to Dismiss. [Doc. 53 at 6]. Such a request fails to comply with the Local Rules of Practice for this District, which provide that "[a] motion shall not be included in a response or reply to the original motion" but must instead "be filed as a separate document." D.C.COLO.LCivR 7.1(d). "A district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead 'merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'" *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)); *see also Tirado v. City of Colo. Springs*, No. 21-1137, 2021 WL 6061781, at *2 (10th Cir. Dec. 20, 2021) (affirming denial of amendment where the request to amend was made in response to a motion to dismiss). This is because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the [claimant's] request to amend and the particular grounds upon which such a request would be based." *Johnson*, 950 F.3d at 721 (quotation omitted). The court declines to grant leave to amend here, where Defendant has not filed a formal motion seeking such leave, its request is not properly before the court, and Defendant has not explained the basis for its proposed amendment.[14]

---

[14] Additionally, the court notes that Defendant's request to amend invokes only Rule 15 of the Federal Rules of Civil Procedure. *See* [Doc. 53 at 6]. However, when a party seeks leave to amend after the deadline to join parties and amend pleadings, the party must also demonstrate that good cause exists to amend the Scheduling Order under Rule 16(b)(4). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1242 (10th Cir. 2014).

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Houston Casualty Company's Motion to Dismiss Swinerton Builders' Counterclaims for Lack of Subject Matter Jurisdiction [Doc. 50] is **GRANTED in part** and **DENIED in part**;

(2)    Defendant's Counterclaims Two and Three are **DISMISSED without prejudice** for lack of subject matter jurisdiction;

(3)    Defendant's Counterclaim One, to the extent it asserts a breach of contract arising out of the alleged failure to defend or indemnify, is **DISMISSED without prejudice** for lack of subject matter jurisdiction;

(4)    Defendant's Counterclaim One, to the extent it asserts a breach of contract arising out of the alleged demand of claims-adjustment expenses prior to a coverage determination, **REMAINS**, but no later than **August 23, 2022**, Defendant shall **SHOW CAUSE** as to why the remainder of Counterclaim One should not be dismissed for failure to state a cognizable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

(5)    To the extent that Defendant seeks to amend its Counterclaims, it must meet and confer with Plaintiff and file an appropriate motion no later than **August 23, 2022**.

DATED:  August 9, 2022                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge